**UNITED STATES of America, Appellee,**

**v.**

**Robert MARTINEZ, a/k/a "Robert Berk", Defendant-Appellant.**

**No. 1342, Docket 85–1067.**

United States Court of Appeals, Second Circuit.

Argued June 25, 1985.

Decided Oct. 3, 1985.

Stuart E. Abrams, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for Southern Dist. of New York, New York City, on brief), for appellee.

Lawrence Mark Stern, New York City (Martin L. Schmukler, New York City, on brief), for defendant-appellant.

Before KEARSE, CARDAMONE and FRIEDMAN,* Circuit Judges.

KEARSE, Circuit Judge:

Defendant Robert Martinez, a/k/a "Robert Berk," appeals from a judgment entered in the United States District Court for the Southern District of New York after a jury trial before Abraham D. Sofaer,

---

* Honorable Daniel M. Friedman, United States Court of Appeals for the Federal Circuit, sitting by designation.

*Judge*, convicting him of attempting to commit a murder within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 1113 (1982). Martinez was fined $1,000 and sentenced to three years' imprisonment, to be served consecutively to a five-year term imposed on a prior conviction. On appeal, Martinez contends principally that the trial court should have entered a judgment of acquittal because the evidence was insufficient to establish an attempt to murder and because the jury's verdict of guilty on that count was inconsistent with the court's dismissal of another count against him and with the jury's verdict of not guilty on a third count; and he challenges the admission at trial of certain evidence against him. Finding no merit in Martinez's arguments, we affirm the judgment of conviction.

## I. BACKGROUND

### A. *The Events*

The government's evidence at trial consisted chiefly of the testimony of Herbert McNeil, a government informant who, in 1983, had been an inmate at the Metropolitan Correctional Center in New York City ("MCC"). Taking the evidence in the light most favorable to the government, the events were as follows.

In the spring of 1983, Martinez was incarcerated at MCC awaiting sentencing following his plea of guilty to a narcotics charge. Martinez planned, however, to hire a new lawyer and to withdraw his guilty plea. Terry Paul Jones, another inmate at MCC, had testified at a 1975 narcotics trial at which Martinez, then a fugitive, was a defendant but was not present. Jones was a potential witness against Martinez on a narcotics charge on which Martinez would be tried if he succeeded in withdrawing his plea. When Martinez learned that Jones was being transferred from MCC to the Federal Correctional Institution at Lompoc, California ("Lompoc"), he sought an introduction to McNeil, who had previously been in Lompoc, and asked if McNeil knew anyone who could arrange

for Jones's murder. McNeil said he would get back to Martinez.

McNeil, unbeknownst to Martinez, was a government informant and reported Martinez's solicitation to the FBI. He subsequently told Martinez that "it could be done." In an ensuing conversation, Martinez told McNeil that if Jones could be killed and Martinez could retract his guilty plea, Martinez could "possibly beat the case" against him.

Martinez eventually agreed to pay McNeil approximately $10,000 for the murder—$3,000 in cash plus a few ounces of cocaine—and showed McNeil an MCC Transfer Notice that listed Jones's full name and prisoner identification number. Martinez told McNeil that payment could be made through other people after Jones was murdered. McNeil agreed to this arrangement but said he would need some money in advance; Martinez said he would get him some. On May 11, 1983, Martinez told McNeil he had something for him, went to McNeil's cell, and gave him $350 in cash. McNeil said he would forward the money to his contact in Lompoc; in fact he gave the money to FBI Special Agent Barbara Dennis, who visited McNeil posing as his girlfriend.

On May 12, 1983, the day after Martinez gave McNeil the $350, Martinez, represented by a new lawyer, appeared before Judge Edward Weinfeld in the narcotics case in which he was to be sentenced and indicated that he was considering moving to withdraw his guilty plea. On May 19, 1983, Judge Weinfeld denied Martinez's formal motion to withdraw his plea, and on the following day he sentenced Martinez to five years' imprisonment.

Shortly thereafter, Martinez told McNeil that he had not been able to withdraw his guilty plea but that it made no difference; he still wanted Jones killed. In a conversation on May 25, 1983, during which McNeil wore a concealed recording device, McNeil told Martinez that he had sent Martinez's $350 to the would-be killer in Lompoc, but had learned that the latter had been put

into segregation and had been unable to kill Jones. Martinez said that since he had now been sentenced on his narcotics conviction, there was no point in going through with the murder if it would cause trouble for McNeil's contact, but that if there would be no problem, McNeil's contact should go ahead and kill Jones. Toward the end of the conversation, Martinez said, "[M]aybe it doesn't pay for me to do it, ya know what I mean? ... Wait a week ..., let's find out what's happening...." McNeil told Martinez that he would return the $350 if the murder did not go through; Martinez told McNeil not to worry about the money. The recording of this conversation was played for the jury. Later that day, Special Agent Dennis brought McNeil $350 in cash which McNeil gave to Martinez. Martinez told McNeil that if the murder took place, he would make sure that McNeil was paid the amount of money he wanted.

On the basis of these events, Martinez was eventually indicted on three counts: (1) attempting to commit a murder within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. §§ 1113 and 2 (1982); (2) attempting to intimidate and threaten a witness, in violation of 18 U.S.C. §§ 1512(a)(2) and 2 (1982); and (3) attempting to retaliate against a witness, in violation of 18 U.S.C. §§ 1513 and 2 (1982).

## B. The Defense Case and the Disposition of the Charges

In response to McNeil's testimony as described above, the defense case consisted principally of (1) the testimony of Martinez, who denied that he had either sought to kill Jones or paid McNeil $350, and (2) a vigorous attack on McNeil's credibility. In his opening statement, and in his cross-examination of McNeil, Martinez's attorney suggested that McNeil had fabricated his story about Martinez in order to gain early release from prison. It was brought out that in the past McNeil had made incriminating statements not only against unincarcerated lawbreakers and inmates at MCC, but also against MCC guards and guards at another prison; it was suggested that McNeil would readily make false accusations in order to advance the time of his own release from prison.

During its redirect examination of McNeil, the government asked McNeil why he had not testified against the MCC guards whom he had accused. McNeil responded that he had not testified because the defendants had pleaded guilty. The government also introduced into evidence two letters from the United States Attorney for the Southern District of New York discussing McNeil's participation in an investigation of corrupt prison guards at MCC. One of the letters stated that "All seven of the guards with whom Mr. McNeil dealt were arrested and indicted. All have pleaded guilty...."

At the close of the evidence, the trial court dismissed the charges that Martinez, in violation of 18 U.S.C. § 2, had committed the alleged offenses as an aider and abettor; and it dismissed count two, the intimidation count brought under § 1512(a)(2), stating, "I don't see the need for it; it's duplicative and I think quite misleading. I don't see that this is an intimidation case." Counts one and three were given to the jury, which found Martinez guilty of attempted murder (count one) but not guilty of attempted retaliation (count three). Martinez was fined $1,000 and sentenced to three years' imprisonment, to be served consecutively to the five years' imprisonment to which he had been sentenced on the narcotics charge.

## II. DISCUSSION

Martinez challenges his conviction principally on the grounds that (1) the evidence was insufficient to establish an attempt to murder; (2) the jury's verdict of guilty on the attempted murder count cannot stand because it is inconsistent both with the verdict of not guilty on the retaliation count and with the court's dismissal of the intimidation count; and (3) the trial court erred in admitting evidence of the guilty

pleas by MCC guards. We find no merit in these contentions.

## A. *The Sufficiency of the Evidence of Attempt*

■ A person is guilty of an attempt to commit a crime if he or she (1) had the intent to commit the crime, and (2) engaged in conduct amounting to a "substantial step" towards the commission of the crime. *United States v. Mowad*, 641 F.2d 1067, 1073 (2d Cir.), *cert. denied*, 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 86 (1981); *United States v. Manley*, 632 F.2d 978, 988–89 (2d Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *United States v. Jackson*, 560 F.2d 112, 117–20 (2d Cir.), *cert. denied*, 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977). We have held that "[a] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime...." *United States v. Manley*, 632 F.2d at 987–88; *see United States v. Jackson*, 560 F.2d at 118–19; *United States v. Coplon*, 185 F.2d 629, 632–33 (2d Cir.1950) (L. Hand, *Ch. J.*), *cert. denied*, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952).

■ Viewing the evidence, as we must, in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed.2d 680 (1942); *United States v. Esdaille*, 769 F.2d 104, 108 (2d Cir.1985) (quoting *United States v. Young*, 745 F.2d 733, 762 (2d Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985)), we conclude that the proof here clearly sufficed to permit a rational juror to find that Martinez intended to murder Jones and took a substantial step, beyond mere preparation, to achieve the killing. The proof included evidence that Martinez explicitly told McNeil several times that he wanted to have Jones murdered; that he sought out McNeil because McNeil had contacts at Lompoc; and that he came to agreement with McNeil as to who at Lompoc would murder Jones, how much it would cost, and how payment would be effected. Finally,

having agreed that the bulk of the $10,000 payment would be made after the murder was completed, Martinez gave McNeil a $350 down payment for the job, thereby taking the last step required of Martinez to accomplish the actual commission of the crime. Under the above authorities, the evidence of attempt amply supported the jury's verdict.

## B. *The Alleged Inconsistency of the Verdict of Guilty*

Conceding that the evidence at trial was sufficient to establish that he had the intent to kill Jones, Martinez contends that the intent element of the offense of attempted murder should nonetheless be deemed lacking as a matter of law in light of the jury's verdict of not guilty on the retaliation count and the trial court's dismissal of the intimidation count. In essence, Martinez argues that since the trial court dismissed the charge that Martinez had intended to intimidate Jones to prevent him from testifying, and since the jury found there was not sufficient evidence that Martinez intended the murder of Jones as retaliation, "there was no intention left upon which to found a verdict of plain attempted murder of a federal prisoner." We find no merit in this argument, which displays a dual confusion: first, a confusion between two types of intent, *i.e.*, the intent to commit an act and the intent thereby to achieve some other goal; and, second, a confusion between the goal itself and the means of its accomplishment.

■ Count one charged Martinez with attempting to commit murder in violation of 18 U.S.C. § 1113. Section 1113 provides, in pertinent part, that "whoever, within the special maritime and territorial jurisdiction of the United States, attempts to commit murder or manslaughter, shall be fined not more than $1,000 or imprisoned not more than three years, or both." While, as discussed above, the law as to attempts requires proof of intent, the intent that must be proven is the intent to commit the forbidden act; no showing is required of an intent to accomplish some other goal be-

yond the commission of the forbidden act. The latter intent may be shown as the reason for the existence of the intent to commit the act, *i.e.*, as the motive for the attempt; and proof of such a motive may serve to persuade the jury that the accused did in fact have the intent to commit the forbidden act. But the two types of intent are not, as Martinez would have it, one and the same. Since neither § 1113 nor judicial decisions impose any requirement of proof of a particular motive for the attempted murder, the government was not required to prove that Martinez's intent to kill Jones was based on a desire for retaliation, or intimidation, or deterrence, or any other such goal. The only proof required as to Martinez's mental state was that his intention, whatever his motivation, was to kill Jones.

■ Even were we to agree with Martinez that proof of a particular motivation was required for conviction under § 1113, we would reject his contention that there was any inconsistency between the jury's verdict of guilty on the attempted murder charge and the outcome of the other two counts. Notwithstanding Martinez's characterization of it, the trial court's dismissal of the § 1512(a)(2) count had not implied that Martinez had not intended to prevent Jones from testifying. Indeed, when Martinez argued to the trial court that the jury's verdict was inconsistent, the court stated that the jury plainly had concluded that Martinez had not sought to retaliate but "was trying to presumably prevent future testimony." Section 1512(a)(2) prohibits the use of intimidation, or physical force, or threats, with the intent to cause a person to withhold testimony from an official proceeding. The trial court had dismissed the § 1512 count because there was no indication that Martinez had sought merely to threaten or to intimidate Jones in order to dissuade him from testifying; and to the extent that the government sought to prove that Martinez had attempted to use physical force, there was no proof that he had sought to do anything short of killing Jones, and the § 1512 count was thus duplicative of the attempted murder

count. The fact that the court did not see this as a matter of intimidation and accordingly eliminated the intimidation count from the case thus did not imply that the court found Martinez had not intended to prevent Jones from testifying, but only that the intended prevention was not to be accomplished by means of threat or intimidation.

In sum, we see nothing in the law or in the record of this case to undermine the jury's implicit finding that Martinez intended to kill Jones.

## C. *The Admissibility of the Guilty Pleas by MCC Guards*

Finally, we reject Martinez's contention that the admission in evidence of the guilty pleas by MCC guards violated Fed.R.Evid. 803(22)'s proscription against the use of certain hearsay evidence and Martinez's due process right to a fair trial. First, we note that when the government, on its redirect examination of McNeil, approached the subject of the guilty pleas, the only ground for objection stated by Martinez was that the evidence was improper rebuttal because the matter had been gone into during the government's direct examination of the witness. There was no objection on the ground that the evidence was hearsay or that its admission was unduly prejudicial. Martinez's present arguments thus have been waived. *See* Fed.R.Evid. 103(a)(1); *United States v. Rubin*, 609 F.2d 51, 62–63 (2d Cir.1979), *aff'd*, 449 U.S. 875 (1981); *United States v. Indiviglio*, 352 F.2d 276, 279–80 (2d Cir.1965) (en banc), *cert. denied*, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). In any event, the present arguments have no merit.

Rule 803 of the Federal Rules of Evidence provides, in essence, that while certain judgments of conviction, whether entered after a trial or after a plea of guilty, are admissible at trial as exceptions to the hearsay rule, that exception does not extend to "judgments against persons other than the accused" when offered by the government in a criminal prosecution.

Martinez argues that under this Rule, the guilty pleas of the MCC guards should have been excluded from evidence. Even assuming that the Rule was intended to deal not just with judgments but with the underlying guilty pleas as well, Martinez's argument misconstrues both the Rule and the nature of the evidence.

Rule 803(22)'s exclusion of certain types of evidence from the scope of the Rule does not necessarily mean that those classes of evidence are inadmissible. The Rule merely identifies types of evidence that may be admitted as exceptions to the hearsay rule and types of evidence that are not within those hearsay exceptions. It does not purport to deal with the admissibility of evidence that is not hearsay at all.

■ The guilty pleas of the MCC guards were not hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The issue at Martinez's trial was not whether the MCC guards were guilty; it was, rather, whether McNeil was a witness whose testimony was worthy of belief or whether, instead, he typically fabricated the wrongdoings with which he charged others and had fabricated the story against Martinez in hope of gaining a reduction of his own sentence. Whether or not each of the guards was in fact guilty of the offenses charged, McNeil's credibility was supported by the very fact that all of those MCC guards chose to plead guilty rather than to stand trial. Thus, the guilty pleas were admitted in evidence not to prove the fact of their utterance. The pleas therefore were not hearsay, and Rule 803's listing of exceptions to the hearsay rule and of exclusions from those exceptions has no relevance in the present case.

■ Martinez's so-called "due process" argument fares no better. Fed.R. Evid. 403 gives the trial court broad discretion to weigh the probative value of relevant and otherwise admissible evidence against its possible prejudicial effect and to determine whether, on balance, the evidence should be admitted or excluded. The decision of the trial judge to admit relevant evidence that may have some prejudicial effect will not be overturned in the absence of an abuse of discretion. *United States v. Aulet,* 618 F.2d 182, 191 (2d Cir.1980); *United States v. Robinson,* 560 F.2d 507, 514–15 (2d Cir.1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). We find no such abuse of discretion here, for it is well settled that a cross-examination attacking a witness's credibility and character will open the door to redirect examination rehabilitating the witness. *United States v. Dukes,* 727 F.2d 34, 43 (2d Cir.1984); *United States v. Medical Therapy Sciences, Inc.,* 583 F.2d 36, 40–42 (2d Cir.1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979); *United States v. Finkelstein,* 526 F.2d 517, 527 (2d Cir.1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). Evidence whose probative value might not be thought to outweigh its prejudicial effect if offered on direct examination may well be admitted during redirect examination "for the purpose of rebutting the false impression which resulted from ... cross examination." *Id.* These principles govern the present case.

The thrust of Martinez's defense was that McNeil was an unscrupulous and unreliable individual who would say or do anything in order to curry favor with prosecutors and prison authorities in the hope of advancing the date for his own release from prison. In his opening statement, Martinez's attorney told the jury that in fact Martinez had had no desire to have Jones killed and had made no effort whatever in that direction, and that McNeil himself had initiated contact with Martinez because "McNeil ... was trying to create another crime that somebody could be prosecuted for in the hope that this might help him with his current 15-year sentence, and that is the history of his criminal career." That opening statement referred to the fact that McNeil had made accusations against guards at MCC and at another prison. In his cross-examination of McNeil, Martinez's

attorney brought out that McNeil had accused the latter guards of complicity in his escape from that prison, but that he had not testified against them and that no guard was convicted of having aided his escape. This line of questioning was followed shortly by a reference to McNeil's accusations against MCC guards and McNeil's hope that his accusations against guards and inmates at MCC would result in his early release.

Against the background of these attacks by the defense on McNeil's credibility, which included outright statements that McNeil was lying in his charges against Martinez and suggestions that he had a long history of fabricating accusations, the trial court was within the bounds of discretion to admit the evidence that all of the MCC guards accused by McNeil had pleaded guilty.

We have considered all of Martinez's other arguments on this appeal and have found them without merit.

## CONCLUSION

The judgment of conviction is affirmed.