**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Paul LOCHMONDY (88–2049); Charles Ludlow (88–2134),**
**Defendants–Appellants.**

**Nos. 88–2049, 88–2134.**

United States Court of Appeals,
Sixth Circuit.

Argued July 27, 1989.

Decided Nov. 28, 1989.

John C. Bruha, argued, Office of the U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, Mich., for plaintiff-appellee U.S.

Craig W. Haehnel, Grand Rapids, Mich., for defendant-appellant Paul Lochmondy.

Larry C. Willey, argued, Dennis C. Kolenda, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for defendant-appellant Charles Ludlow.

Before WELLFORD and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Charles Ludlow and Paul Lochmondy appeal their convictions for participation in a large conspiracy to distribute marijuana. We affirm.

### I.

In August 1983, Dennis Erikson obtained a 43,000 pound load of marijuana that was brought to Atlantic City, New Jersey from Colombia, South America. The marijuana was loaded onto a semi-truck and taken to the home of a codefendant, Willis Canter, on MN Avenue in Galesburg, Michigan, near Kalamazoo.

At the MN Avenue address, the truck got stuck in the driveway and almost tipped over. A tow truck was called to free the semi, and the semi was then taken to a backup storage site at the farm of Cornelius Plantefaber near Three Rivers, Michigan. The marijuana was unloaded, weighed, and put into a pole barn. The total weight was 43,000 pounds, including packaging.

The marijuana was distributed directly from the farm, and was also taken to other locations for distribution. Plantefaber and Martin Pierman guarded the marijuana while it was at the farm. Plantefaber, who was granted immunity for his cooperation in this and other cases, testified that he purchased between 4,000 and 6,000 pounds of the marijuana for distribution. He testified that he initially sold about 4,500 to 4,700 pounds of this marijuana to David Dildine in Ann Arbor, but that much of this marijuana was later returned. He also sold some of the marijuana to appellants Ludlow and Lochmondy and other individuals.

Plantefaber identified records showing that he sold over 4,400 pounds of marijua-

na to Dildine, over 7,000 pounds to Ludlow, and several hundred pounds to Lochmondy. Exhibit 5, which was in both Plantefaber's and Pierman's handwriting, showed bales of marijuana distributed to "C," which Plantefaber said stood for Charles Ludlow. Exhibit 6 reflected bales of marijuana distributed to "R" or "RA" (a nickname for Ludlow) and "P," which stood for Paul Lochmondy. Exhibit 7 was a running total of marijuana from this load sold to "C" (Ludlow). Plantefaber said that he delivered the marijuana to Ludlow at Ludlow's residence in Oshtemo, Michigan, and to Lochmondy at Lochmondy's body shop in Marcellus, Michigan.

Erikson testified that Plantefaber took marijuana from this load to Dildine, appellants Ludlow and Lochmondy, as well as other individuals. Erikson testified that Plantefaber wanted to avoid conflicts of interest, and recalled Plantefaber asking him if it would be all right for Plantefaber to take marijuana to Ludlow and Lochmondy.

Pierman testified that he helped guard the marijuana at Plantefaber's farm and kept records on the load. He identified his handwriting on Exhibits 2, 3 and 5. He recalled being at the farm one evening by himself when appellant Lochmondy came to the farm looking for Plantefaber. Lochmondy did not say why he was looking for Plantefaber and left after a brief discussion with Pierman. Pierman testified that Plantefaber also knew Charles Ludlow at the time, but did not see Ludlow at the farm.

In March 1988, a grand jury returned a three-count indictment against Ludlow and Lochmondy and 15 other defendants. Count 1 of the indictment charged all of the defendants with conspiracy to possess with intent to distribute and distribution in excess of 1,000 pounds of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1). Count 2 of the indictment charged all of the defendants with possession with intent to distribute and distribution of in excess of 1,000 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Prior to trial, the district court severed the defendants into two groups for trial. The first trial consisted of five defendants and resulted in convictions of four out of the five. Ludlow and Lochmondy were in the second group to be tried, along with several codefendants. The appellants' trial began on August 2, 1988, and ended on August 26, 1988. At the close of the government's case, the court dismissed Count 1 against appellants Ludlow and Lochmondy. The government's motion to reconsider that ruling was denied. The court also ruled that it would instruct the jury only on the lesser-included offense in Count 2 of possession with intent to distribute *less* than 1,000 pounds of marijuana as to Ludlow and Lochmondy. Both appellants were found guilty of the lesser-included offense. Their motion for a new trial was denied.

Ludlow was sentenced to two years in prison, a two year special parole term, and assessed a $10,000 fine. Lochmondy, who had a previous felony marijuana conviction, was sentenced to an enhanced penalty of eight years in prison, a four year special parole term, and was also assessed a $10,000 fine.

## II.

### 1. *Bolstering Credibility and Evidence of Guilty Pleas*

Appellants' first argument is that the government improperly bolstered the testimony of Plantefaber by eliciting testimony that he had cooperated on other cases that resulted in convictions and by referring to that testimony in rebuttal argument. The government responds that it bolstered Plantefaber's testimony only in response to "severe attacks on his credibility by the defense." In denying the defendants' motion for a mistrial, the court found that the bolstering of Plantefaber's credibility was not improper because it was in response to an attack on the witness' credibility. The court offered to deliver a limiting instruction, but that was declined by the defendants.

The record shows that the credibility of witness Plantefaber was strongly attacked

by the defendants at trial. During his opening statements, counsel for defendant Ludlow told the jury that "any witness who says that [Ludlow] did it is simply lying to you." He also told the jury that "I think it will be clearly demonstrated that the prosecution witnesses are indeed lying to you." The only prosecution witness defense counsel mentioned by name was Plantefaber.

On cross-examination, Plantefaber was questioned about various drug and income tax violations for which he was not being prosecuted pursuant to his immunity agreement. The government then asked Plantefaber the following questions on redirect:

Q. Now, Mr. Plantefaber, did you cooperate with the government in an investigation of Mr. Erikson's, Dennis Erikson's cocaine business in addition to his marijuana business?

A. Yes, sir, I did.

Q. Do you know whether or not Mr. Erikson has pled guilty to being involved in the sale of cocaine as a result of this investigation?

A. I think he admitted it, but was not charged for it.

Q. Do you know what the scope of his charges were?

A. No, sir, I really don't know the exact.

Q. Mr. Plantefaber, have you cooperated with the government in other major investigations that do not involve the people in this trial or the subject matter of this case?

A. Yes, sir, I think numerous.

Q. And have some of those investigations resulted in convictions of various defendants, Mr. Plantefaber?

A. Yes, sir, they have.

No objection was made to this line of questioning at the time or at the close of the trial later that day. On the following morning, however, Ludlow's counsel moved for a mistrial, citing irreversible error.

During final argument, counsel for defendant Ludlow argued that no reasonable person could believe Plantefaber on "anything." He argued that Plantefaber's immunity agreement gave him an "incredibly powerful reason to lie." He also argued

that Plantefaber was a "master of deception who, from 1980 on, lied about everything." He accused Plantefaber of lying to the government, to the grand jury, and to the trial jury, and of manufacturing evidence against his client. Lochmondy's counsel alleged that "K.C. Plantefaber for that grant of immunity would do and say anything the government asked."

Responding to these attacks on Plantefaber's credibility during final argument, the government argued on rebuttal that:

... they describe Mr. Plantefaber as the second biggest drug dealer you have heard about in this case, ladies and gentlemen, that he was walking away Scot free; and one of the other lawyers referred to you, ladies and gentlemen, that the government was using big fish to catch little minnows. Well, keep in mind, ladies and gentlemen, that Mr. Plantefaber was not given immunity to testify in just this particular case. Mr. Plantefaber told you that he has provided information in a number of other cases, and he told you that some of those cases have already resulted in convictions of other people.

Defense counsel immediately objected, and the objection was sustained. At the request of the defense, the court included the following instruction in its final jury instructions:

There was some comment made about, or testimony made about Mr. Plantefaber's cooperation with the government. His cooperation with the government in other cases is not to be considered by you at all in determining the guilt or innocence of these defendants on trial.

Several circuits have held that evidence of cooperation on other matters is admissible to justify a cooperation agreement and to rebut allegations of bias. *United States v. Sanchez*, 790 F.2d 1561 (11th Cir.1986); *United States v. Fusco*, 748 F.2d 996 (5th Cir.1984); *United States v. Martinez*, 775 F.2d 31 (2d Cir.1985). In *Martinez*, the court held that the trial court did not abuse its discretion in admitting evidence, in response to attacks on a witness' credibility, that other persons the witness had made

accusations against had pled guilty. The court said that "cross-examination attacking a witness's credibility and character will open the door to redirect examination rehabilitating the witness." 775 F.2d at 37. In the instant case, the district court specifically found that the challenged testimony was in response to an attack on Plantefaber's credibility.

Viewed in the context of the entire trial, it appears the district court correctly found that, in light of the attacks on Plantefaber's credibility, the testimony and argument about his cooperation on other cases was not error. The defense did not contemporaneously object to the testimony and declined the court's offer of an immediate limiting instruction. Finally, the giving of a limiting instruction by the district court at the close of trial precludes a finding of reversible error, even if we deemed the actions of the government to be erroneous. The district court, therefore, did not commit clear error in denying the appellant's motion for mistrial on this ground.

 The appellants also argue that the government improperly used the guilty pleas of codefendants as substantive evidence of guilt. The government responds, however, that a codefendant's guilty plea may be used properly as evidence of a *witness's* credibility. *United States v. Christian,* 786 F.2d 203 (6th Cir.1986). This court stated in *Christian* that "it is reasonable to believe that the jury uses the testimony regarding the facts to convict the codefendants and the testimony regarding the guilty plea to assess the witness' credibility." *Id.* at 214.

We believe the government is correct, as the district court also found, that in this case the guilty pleas of codefendants who testified at trial were used as evidence of witness credibility, *not* as evidence of the appellants' guilt. As the trial court recognized, the prosecutor's comments did not refer to the five defendants on trial, but to the codefendants who testified. The court stated that "it appears clear ... that the prosecutor's comments were intended to reflect upon Mr. Plantefaber's credibility as a witness.... and did not invite the jury

to conclude that defendants Lochmondy and Ludlow were guilty simply because their codefendants pleaded guilty to similar charges." The two Tenth Circuit cases cited by the appellants are distinguishable because in both cases the prosecutor referred to the guilty pleas of coconspirators, including nonwitnesses, and did so before the witnesses' credibility had been attacked. *See United States v. Austin,* 786 F.2d 986 (10th Cir.1986); *United States v. Smith,* 806 F.2d 971 (10th Cir.1986). We conclude that the admission of evidence as to the guilty pleas of witnesses in the present case does not constitute reversible error.

### 2. *False or Perjured Testimony*

The appellants next argue that they were denied a fair trial because the government failed to correct false testimony by Plantefaber. This argument is based on Plantefaber's denial on cross-examination that he had originally told the government that "462 pounds [of marijuana] were distributed to David Dildine."

 The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *United States v. O'Dell,* 805 F.2d 637, 641 (6th Cir.1986), *cert. denied,* 484 U.S. 859, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987). The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony. *United States v. Griley,* 814 F.2d 967, 971 (4th Cir.1987).

 The allegedly inconsistent statement given by Plantefaber was disclosed to the defense by the government prior to the witness taking the stand. Thus, there was

absolutely no concealment of this statement by the government. Although Plantefaber's statement may have been inconsistent with other evidence presented in the case, the appellants have not demonstrated that it was indisputably false. The district court found that "the defendants have failed to establish that the prosecutor knew Plantefaber's testimony to be false."

The case cited by the defendants in which a contrary statement was held to be a denial of due process is *United States v. Barham*, 595 F.2d 231 (5th Cir.1979), *cert. denied*, 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 205 (1981). That case is completely distinguishable from the circumstances of this case because there "the prosecution did not simply allow the false evidence to go uncorrected ... there was an additional error of commission—the misleading questions posed to two of the witnesses which, in the unusual circumstances of the case, reinforced the deception." 595 F.2d at 243 n. 17. No such reinforcement of the allegedly false statement occurred in this case. Thus, it does not appear under the circumstances that the government's use of Plantefaber's statement should be deemed to have prevented the appellants from receiving a fair trial.

### 3. *Other Impeachment Information*

■ Although government witness Plantefaber was extensively cross-examined during trial about his immunity agreement, grand jury testimony, false tax returns, and substance abuse, the appellants argue on appeal that they were improperly denied additional avenues for impeaching the witness. Before Plantefaber testified, the defense sought disclosure of bank records delivered under seal to the court for *in camera* inspection during a previous trial of codefendants. Asked about these records during pretrial interviews, Plantefaber indicated that he "may have made a false statement on a bank loan application concerning his occupation," and that information was disclosed to the defendants as part of the government's *Brady* information. Plantefaber was also asked during cross-examination whether he lied on a bank loan application. Following his cross-

examination, the defense renewed its request for disclosure of the bank records. The district court granted disclosure of the records from 1980 on, but denied disclosure of a 1976 file as being too remote.

The record shows that the government had not seen the bank records prior to their disclosure to the defense, and the appellants neglected to mention that the district court disclosed these records to the appellants at trial. It is clear that no *Brady* violation occurred with regard to the bank records because the defendants were given access to the records in question, with the exception of a 1976 file which the appellants have not shown to be material.

■ The defendants also sought disclosure of Plantefaber's federal income tax returns. Plantefaber's immunity agreement did not expressly give him immunity for federal tax violations, but arguably implied that he had immunity for criminal tax violations in that it expressly stated he did not have immunity for "*civil* tax consequences, if any" (emphasis added). The defendants argued that since Plantefaber's immunity agreement included immunity from criminal tax violations, they should be allowed to view his income tax returns in order to see what he had been given immunity from.

The district court originally ordered the government to produce Plantefaber's income tax returns for 1980–1986 for *in camera* review. The Internal Revenue Service took the position that the district court's order was legally insufficient to authorize disclosure of those returns, and the government moved for reconsideration of the order. After reviewing the relevant authorities, including 26 U.S.C. § 6103 and *United States v. Bibby*, 752 F.2d 1116 (6th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986), the district court granted the government's motion for reconsideration and withdrew its order for production of the returns.

Section 6103 authorizes disclosure of returns previously disclosed to federal officials "to the extent required by order of the court pursuant to § 3500 of Title 18,

United States Code (the Jencks Act), or Rule 16 of the Federal Rules of Criminal Procedure." 26 U.S.C. § 6103(i)(4)(A)(ii). In *United States v. Bibby*, the district court denied production of an IRS tax audit of a government witness which the defendant sought for impeachment purposes. In affirming the district court's ruling on that issue, this court held that "the *Brady* requirement only applies to evidence which the prosecutor knew or should have known was exculpatory," and that *"Brady* does not apply to evidence not in the prosecutor's possession." 752 F.2d at 1125.

Here, as in *Bibby*, the prosecutor never had possession or knowledge of the income tax returns sought by the defendants. Since the prosecution never obtained disclosure of those returns, § 6103(i)(4) is inapplicable. The district court, therefore, properly reconsidered and rescinded its order requiring the IRS to produce the returns.

Prior to calling Plantefaber as a witness, the government moved pursuant to FRE 609 to exclude any reference to Plantefaber's prior convictions on cross-examination. Plantefaber had two prior drug convictions that were more than ten years old at the time of trial. He also had a misdemeanor conviction for disorderly conduct, also more than ten years old, which allegedly resulted from a shoplifting incident. After hearing arguments from both sides, the district court ruled that the convictions were too remote and granted the motion in limine as to all three convictions.

▇▇▇▇▇ Rule 609 of the Federal Rules of Criminal Procedure provides in part that evidence of convictions more than ten years old is inadmissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." The district court has broad discretion in determining whether to admit evidence of prior convictions. Considering the language of the rule and the remoteness in time of the convictions here at issue, the district court did not abuse its discretion by suppressing evidence of the prior convictions. We would caution, however, that in a case such as this involving testimony of a principal government witness, careful consideration should be given to admission of evidence of past convictions.

▇▇▇▇ The government also moved in limine to exclude any reference to Plantefaber's prior drug addiction to heroin, which occurred more than ten years before trial or, in the alternative, to require the defense to make an offer of proof as to how such evidence was probative. The district court ruled that such evidence could be probative and overruled the government's motion in limine.

During cross-examination, counsel for defendant Ludlow asked Plantefaber on what he spent the hundreds of thousands of dollars he earned from drugs. The government objected on grounds of relevancy, but the district court allowed the question because it was intended to explore whether Plantefaber spent money on heroin. The court then noted that:

I think it is irrelevant unless it gets to the current time. Whether he was addicted to drugs in the past has only relevancy insofar as it bears upon his ability, his ability to remember.

Defense counsel then expressed interest in inquiring about drug addiction at the time of the distribution of the August 1983 load of marijuana. The court permitted the questioning. When cross-examination resumed, counsel asked Plantefaber whether he was spending substantial income on personal drugs in August and in September 1983, and the witness said he was not. The witness also denied being addicted to cocaine. Counsel then asked "Did you ever consume heroin?" The government objected, and the objection was sustained because the question was open ended.

The appellants now claim on appeal that they were "prevented from exploring the drug habits and addiction of the witness Plantefaber." We disagree. The record is clear that the district court did not prevent the defense from exploring these matters, but merely sustained an objection to a question about heroin use because it was not limited to any time period.

Finally, appellant Lochmondy complains that he was denied disclosure of all statements made by witness Plantefaber about the defendant, and that this resulted in defendant Lochmondy not taking the stand because he did not know what information might be used to impeach him. The Jencks Act provides in relevant part that:

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use.

18 U.S.C. § 3500.

Before providing the defense with portions of Plantefaber's grand jury testimony, the government redacted information that it considered irrelevant to this offense, including information about other transactions not charged in the indictment. The defense moved for disclosure of the redacted information, and the district court conducted an *in camera* review of that information, ruling that the defendants were not entitled to any additional grand jury testimony. The court stated:

I believe the government's decision was correct, and had I been given the entire transcript to read and to excise, I would have given the defendant exactly what the government did.

The statutory language quoted above contemplates that a defendant will not be given access to all of the information that might be used to impeach him if he testifies. *See United States v. Witschner,* 624 F.2d 840, 843–44 (8th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980). It was not an abuse of discretion for the district court to rule that Lochmondy was not entitled to Plantefaber's statements concerning prior cocaine transactions that were unrelated to the transactions charged in the indictment. Under the standard enunciated in *United States v. Christian,* 786 F.2d at 212, we do not believe the district court improperly limited the defense's access to impeachment evidence under any of the appellants' stated assertions of error.

Accordingly, for the reasons given above, the convictions are AFFIRMED.