NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0354n.06

No. 10-4008

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

*Apr 04, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| DOMINIC JOSEPH MAGA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: COOK, WHITE, and DONALD, Circuit Judges.

COOK, Circuit Judge. Defendant-appellant Dominic Joseph Maga appeals a jury verdict finding him guilty of failing to file income tax returns. He contends that the trial proceedings violated his Sixth Amendment right to confrontation, that the district court erroneously denied his motion for acquittal, and that the district court abused its discretion in denying his motion for a new trial. For the reasons that follow, we affirm.

## I. Background

Several years ago, Maga obtained copies of his "individual master file" transcript (also known as an "IMF transcript" or a "specific transcript"), a technical record that the IRS uses to keep a running account of all of a person's tax events—e.g., penalties assessed, refunds owed, refunds issued, and interest. He noticed that the code "MFR-01" appeared on each of his IMF transcripts.

Unsure of the meaning of this code, he wrote to the IRS about it. An IRS disclosure officer replied via letter that the code meant "1040 not required." Based on this letter and his reading of IRS manuals on the Internet, Maga claims he interpreted the code to mean that he was "not required" to file *any* returns.

The IRS's records revealed that Maga stopped filing tax returns in 1996, years before he received the letter from the disclosure officer. When the IRS sent a levy notice, Maga requested a collection due-process hearing, purporting that he did not need to file tax returns. A grand jury indicted Maga for failure to file a federal income tax returns between 2002 and 2006—five counts in all. It also indicted Maga for four counts of tax evasion.

Central to Maga's arguments on appeal is the government's preparation of his official tax transcripts for use at trial. These transcripts, also known as Form 4340s, document in lay terms the same information contained in an IMF transcript. At trial, the prosecution called IRS employee John DePowell to explain how he generated and certified Maga's official tax transcripts. DePowell testified that he became involved in Maga's case when a special agent from the IRS Criminal Investigative Division asked him to obtain Maga's Form 4340s. According to DePowell, he first cross-referenced the social security number that the agent gave to him with the Social Security Administration to confirm that it belonged to Maga, then generated the Form 4340s by accessing the IRS master file remotely and printing them out at his desk. After verifying the accuracy of the Form 4340s against the data on the computer, he presented his findings to Resident Agent-in-Charge

Martha Williams for further verification. Williams signed the certification at the end of each of the transcripts and DePowell affixed the seal. On the witness stand, DePowell identified the Form 4340s he generated and their accompanying "certificates of official record," observing that the Form 4340s revealed no record of Maga filing a tax return for the years 2002, 2003, 2004, 2005, and 2006. The prosecution did not call Williams.

Maga objected to DePowell's testimony, questioning whether DePowell's limited involvement in generating the forms qualified him to testify as to their contents. The court overruled the objection, observing that Maga could cross-examine DePowell to determine the extent and basis of his familiarity with the forms. During his cross-examination of DePowell, Maga elicited an explanation of the official meaning of MFR-01. DePowell explained that MFR-01 functioned as an internal code to tell IRS employees that they did not need to send tax return forms to the particular individual.

Maga also cross-examined another government witness, IRS Revenue Officer James Keegan—the officer who sent the levy notice. That cross-examination revealed that Maga, in his request for a collection due-process hearing, claimed that he did not need to file a return and, by way of explanation, attached the letter from the IRS disclosure officer explaining the meaning of MFR-01. Keegan read this letter to the jury, which concluded with the statement, "[i]n addition, [this letter] is not an official determination by the internal revenue service as to whether or not tax payers are required to file a return."

3

After the prosecution rested, Maga objected to the admission of the Form 4340s and their certificates and moved for acquittal. The trial court denied the motion without comment. In his closing argument, Maga maintained that he did not willfully fail to file the tax returns because he could not have known from publicly available information that the IRS letter's explanation, "1040 not required," referred to the IRS's obligation to mail tax return forms, rather than his obligation to file tax returns. *See* 26 U.S.C. § 7203 (requiring proof of willfulness as element of "failure to file tax return" offense). The jury returned a guilty verdict for the five counts of failure to file a tax return and acquitted Maga of the four counts of tax evasion.

Maga then moved again for acquittal, arguing that the prosecution failed to rebut his good-faith, lack-of-willfulness defense. He also moved for a new trial, contending that the admission of the Form 4340s and their certificates violated his confrontation rights, that the government destroyed exculpatory evidence and that the prosecution's closing arguments mischaracterized his defense. The court denied both motions and sentenced Maga to eighteen months' imprisonment. Maga timely appealed the conviction, challenging the admission of the Form 4340s and certificates, the denial of the motion for acquittal, and the denial of the motion for a new trial.

## II. Confrontation Clause Objection

We turn first to Maga's confrontation objection to the admission of the Form 4340s and certifications, reviewing the district court's ruling de novo. *United States v. Warman*, 578 F.3d 320, 345 (6th Cir. 2009). Because the government provided Maga an adequate opportunity to cross-

examine DePowell, the author of the Form 4340s, the district court properly overruled Maga's objection.

### A. Form 4340s and Certificates Are Testimonial

The Form 4340s and their certificates qualify as "testimonial" statements triggering confrontation rights. Though the parties dispute whether the business-record hearsay exception applies to this case, we find these arguments irrelevant. Business record or not, the Supreme Court's decision in *Melendez-Diaz* requires the government to demonstrate that the IRS did not generate the forms and certificates for trial to defeat confrontation rights challenges. *See* 129 S. Ct. 2527, 2531-32 (2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004)) (describing as testimonial those "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial"); *see also id.* at 2538 (concluding that records specifically created for use in court do not qualify as "traditional official or business records," and that, "even if they did, their authors would be subject to confrontation nonetheless").

In this case, DePowell created the documents under circumstances where one could reasonably believe that the government would use them at trial. Though the government argues that DePowell "locate[d]" these transcripts (as though DePowell simply found a document that existed before), DePowell's own testimony explains that, in fact, he "generate[d]" the transcripts by

"access[ing] the master file." The forms and the certificates did not exist before an agent in the Criminal Investigation Division asked for them.

The government responds that the forms are merely synopses of tax records translated into plain English. But, as the government must concede, these "transcripts" are not exact copies of the data the IRS ordinarily maintains in its master files. Generating a Form 4340 involves searching through raw data and returning the result, "NO RECORD OF RETURN FILED," rather than copying a preexisting record. *See Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2714–15 (2011) (concluding that, even where a certified lab report restates raw, machine-generated data, it may include representations not revealed in the raw data); *see, e.g.*, *id.* at 2714 (stating that, even in leaving the remarks section blank, the certifier testified to representations not revealed in the raw, machine-produced data). Contending that the forms "are no different than any computer record for which a printout is generated," the government urges that we treat a Form 4340 as functionally equivalent to a copy, even if it does not merely reproduce the underlying coded data. But once a certifier assesses the substantive similarity of the content, as opposed to authenticating the exactness of the copy, he crosses the testimonial line: "certify[ing] to [the record's] substance or effect." *See Melendez-Diaz*, 129 S. Ct. at 2539. Therefore, under *Melendez-Diaz*'s reasoning, the Form 4340s and their certificates are testimonial in nature.

### B. Maga Received Adequate Opportunity for Cross-Examination

Because the Form 4340s and certificates qualify as testimonial statements, the Confrontation Clause requires the government to provide "an opportunity for effective cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis omitted). Maga presents two critiques of his opportunities for cross-examination. First, Maga argues that he lacked such opportunity because the prosecution presented the wrong person for cross-examination; only Williams's name appears on the forms and certificates and only Williams had the authority to affix the seal under Internal Revenue Manual ("IRM") § 1.2.49.6 (2011) (Delegation Order 11-5). Second, he accuses DePowell of blatantly lying on the stand, questioning whether DePowell actually prepared or certified the forms, as DePowell claimed.

But Maga's stance focuses on the wrong qualifications. The identity of the person legally authorized to certify or seal the forms only matters in the context of admitting public records or business records. In the context of a confrontation challenge, the document's authorship, rather than its certification, matters. *See Melendez-Diaz*, 129 S. Ct. at 2538 (noting that the "authors" of affidavits are subject to confrontation); *Stevens v. Bordenkircher*, 746 F.2d 342, 349 (6th Cir. 1984) (concluding that confrontation violation occurred because the "author" of death certificate was not offered for cross-examination); *Lyle v. Koehler*, 720 F.2d 426, 435 (6th Cir. 1983) (holding that defendant had right to cross-examine the "author" of letters that linked him to crime). DePowell testified that he searched the records under Maga's social security number, accessed the master files,

generated the Form 4340s, and verified the correctness of the documents' content. Williams simply verified DePowell's work before signing the documents and "caus[ing] the seal of this office to be affixed." The incriminating information—the portions of the Form 4340s that state "NO RECORD OF RETURN FILED"—came from DePowell's act of generating the Form 4340s, not Williams's act of verifying, signing, or causing affixation of the seal. The government therefore presented the correct person for cross-examination.

Maga also questions authorship, accusing DePowell of lying outright about generating the forms. Yet he bases this accusation on nothing more than his general knowledge of IRS procedures and the absence of DePowell's signature in the documents. He quotes from the IRM, which states, "Preparation of Form 4340 is limited to a few authorized campus employees only. At present, these employees are generally in the Compliance and Accounting Branch functions." IRM § 21.2.3.4.2.1(2). Because DePowell did not belong to the Compliance and Accounting Branch, Maga concludes that DePowell lied about preparing the forms. But the quoted language describes a trend rather than a rule: it only "general[izes]" that "[a]t present" the employees authorized to generate the forms tend to serve certain functions.

Additionally, Maga maintains that if DePowell had conducted a search, he would have prepared a Form 3050 instead of a Form 4340, quoting another IRM provision. *See* IRM § 11.3.6.10(1) ("Certain applicants, usually the Department of Justice, occasionally request certifications from the IRS for use in court proceedings that confirm a lack of records. Form 3050,

8

*Certification of Lack of Record*, should be used for this purpose . . . .”).  Again, Maga reasons wrongly.  Section 11.3.6.10(1)’s instruction does not necessarily imply that each time an IRS employee searches a record and finds nothing, he fills out a Form 3050.  In this case, a special agent from the IRS Criminal Investigative Division asked specifically for “official IRS tax transcripts [i.e., Form 4340s],” Trial Tr. 5:11–14, Aug. 3, 2009, ECF No. 78, rather than for certifications that “confirm a lack of records.”  Due to the nature of the special agent’s request, the cited section of the IRM did not apply to DePowell.

Maga also makes much of DePowell’s response in the negative to the question, “Are you familiar with what an individual master file looks like?”  Anyone who actually generated the Form 4340s would have been familiar with such files, so he contends.  But the transcript reveals that DePowell, before being interrupted by defense counsel, was in the process of explaining why he cannot describe what a file “looks” like—because an IMF is “just a computer [file].”  Later testimony confirms that DePowell knew the contents of IMFs well, even though he could not testify to the physical appearance of the electronic documents.  In short, Maga presents no reason to doubt DePowell’s authorship of the testimonial documents in question, and the district court provided Maga with an adequate opportunity to cross-examine DePowell.  Accordingly, the admission of the forms did not violate Maga’s confrontation rights.

Finally, we note that any error or constitutional deprivation would be harmless because the negative information—that Maga had filed no returns—was uncontested.

III.  Motion for Acquittal

Next, we turn to the district court's denial of Maga's motion for acquittal. "W h e n  t h e sufficiency of the evidence is challenged on appeal, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime." *United States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010) (alterations omitted) (quoting *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996))).

Maga argues that he did not willfully fail to file his tax returns. The word "willfully" in 28 U.S.C. § 7203 requires "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991) (citing *United States v. Bishop*, 412 U.S. 346, 360 (1973)). As evidence of a good-faith misunderstanding of his duty to file tax returns, Maga points to three documents: the IRS letter explaining the meaning of MFR-01, the IRS's explanation of the code as stated in the IRS's "Document 6209" (the IRS document that explains the meaning of IMF codes), and the letter Maga wrote in response to the IRS's levy notice. The IRS's letter states, in relevant part:

> The MFR 01 indicates a 1040 is not required. The MFR is used to identify tax returns a tax payer must file. They are also used to identify the types of forms IRS must mail to the tax payer. The Code is not constant. It can change based upon the latest information received from the tax payer. In addition, it is not an official determination by the internal revenue service as to whether or not tax payers are required to file a return.

Trial Tr. 141:5–14, Aug. 4, 2009, ECF No. 65. One portion of Document 6209 indicates that "MFR" identifies the "types of returns a taxpayer must file" and that "[t]hey are also used to identify the types of forms the IRS must mail to the taxpayer." Internal Revenue Service, Document 6209, 15-10 (2011), *available at* http://www.irs.gov/pub/irs-utl/document6209_redacted.pdf. *But see id.* at 8-52 (cautioning that "FR," which identifies the types of returns a taxpayer must file, should not be confused with "MFR," which identifies the types of forms the IRS must mail). The list of values referenced in Document 6209 explains that the "01" portion of the code means "1040 not required." *Id.* Citing the IRS's letter, Maga's response letter to the levy notice posits that "as per IMFs my MFR is 01, (not required to file a return) see attached." Maga concludes that, in view of this evidence, a reasonable jury could have convicted him only by disregarding the instruction that "[i]f you believe the Defendant did rely upon such statements and representations he's not acting willfully within the meaning of the law. . . ."

When viewed in a light most favorable to the government, the record permits a factfinder to conclude, beyond a reasonable doubt, that Maga actually knew about his legal duty to file and only pretended to rely on an idiosyncratic reading of the IRS letter and documents. *See United States v. Grumka*, 728 F.2d 794, 797 (6th Cir. 1984) ("[A] conviction may be sustained even when proof of willfulness is entirely circumstantial." (citations and emphasis omitted)). Maga's opposition to filing taxes long predates his research into the meaning of MFR-01. He stopped filing taxes in 1996, even though he did not receive the IRS letter until 2000. *See id*. at 797 ("A defendant's prior taxpaying

11

history is competent evidence to establish 'willfulness.'"). Sometime in 1997 or 1998, he discussed his opinions regarding the legality of the IRS with his accountant and, despite her advice that he needed to file tax returns, refused her assistance until after the IRS caught up with him in 2007. *See United States v. Daniel*, 956 F.2d 540, 543 (6th Cir. 1992) (considering defendant's knowledge of accountant's advice in finding such evidence sufficient for willfulness). He also quibbled with his employer for withholding taxes from his paychecks and violated a local income tax ordinance by failing to file income tax returns in the years preceding the IRS letter.

Maga protests that evidence of actions predating receipt of the IRS letter cannot prove willfulness, because the letter changed his understanding of his legal duties. *See* Appellant Reply 24 (citing *United States v. Boulet*, 577 F.2d 1165, 1167–68 (5th Cir. 1978), for the proposition that prosecution must prove willfulness separately for each year in indictment). But the prosecution employs these facts, not as direct proof of Maga's post-letter understanding of the law, but as circumstantial evidence of Maga's attitude toward taxes and his general willingness to violate tax law. A reasonable jury could find this circumstantial evidence of underlying motive relevant in deciding whether to credit Maga's representations of good-faith misunderstanding.

Furthermore, a reasonable jury could decide that an individual wily and meticulous enough to cull the finer points of the IRS's tax practices in search of a loophole—sending a Freedom of Information Act request, demanding explanations of the internal code, poring over manuals—could not have been so inattentive as to actually misunderstand the IRS letter's meaning. The IRS letter

and documents explain that the MFR-01 code, generally speaking, serves two different functions: indicating the type of forms the taxpayer must file *and* the type of forms the IRS must send. The letter does not state which of the two functions the code served in Maga's case (or whether the code indeed served both functions at the same time). And a reasonable jury could disbelieve that the same individual who carefully dissected the IRS letter's meaning with regard to MFR-01 actually failed to notice the express warning, just two or three sentences later, that an individual's code may change with time and that "[the letter] is not an official determination by the internal revenue service as to whether or not tax payers are required to file a return." Even assuming that "1040 not required" excuses Maga from filing a 1040 form, it would be bizarre for Maga to infer that this excuses him from filing tax returns of *any* form. *See* Entry & Order 7, July 8, 2010, ECF No. 47 (deeming Maga's interpretation "plainly incredible").

Maga responds that even unreasonable beliefs may negate the "willfulness" element, if held in good faith. *See Cheek*, 498 U.S. at 203. But a reasonable jury could also conclude that, the more "incredible" one's claimed belief, the less likely that one actually holds such a belief in good faith. *See id.* at 203–04 ("Of course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge."). Maga exerted every effort to verify that MFR-01 meant "1040 not required," yet made no effort to double-check his convenient inference of complete tax exemption. Given Maga's attitudes toward taxes, his familiarity with the IRS letter and manual, the "plainly incredible"

nature of his interpretation, and the absence of any attempt to verify the accuracy of his risky interpretation, a factfinder could conclude beyond a reasonable doubt that Maga willfully disregarded his known duty to file returns. And because tax evasion has different elements than the crime of failure to file tax returns, his acquittal on the evasion charge fails to undermine our confidence in the reasonableness of his conviction for not filing. We therefore affirm the district court's denial of a motion for acquittal.

## IV. Motion for New Trial

Last, we examine the denial of Maga's motion for a new trial for an abuse of discretion. *United States v. Kelley*, 461 F.3d 817, 831 (6th Cir. 2006). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Bridgewater*, 606 F.3d 258, 260 (6th Cir. 2010) (internal quotation marks and citations omitted). Maga contends that the interests of justice require a new trial because the admission of the official tax transcripts violated his confrontation rights, the prosecutor knowingly used false testimony, and the prosecutor's closing argument distorted his defense. Because we rejected the first argument in Section II.B, we address only the latter two here.

## A. No Knowing Use of False Testimony

Maga accuses the prosecution of using testimony it knew or should have known to be false. "The knowing use of false or perjured testimony constitutes a denial of due process if there is any

reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). Before a court decides whether to set aside a conviction on perjured-testimony grounds, it must first ascertain that (1) the statement was actually false, (2) the statement was material, and (3) the prosecution knew it was false. *See United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993) (citing *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986)). "The burden is on the defendant[] to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Lochmondy*, 890 F2d. at 822 (citing *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987)).

Specifically, Maga complains of three falsities. First, he contends that DePowell lied by testifying that he certified the Form 4340s, even though Williams signed the certifications. Maga contends that the word "certify" refers to the act of signing the certifications, while the government uses the term to describe the physical act of affixing the seal. Regardless, DePowell's testimony clarified in what sense he meant the word. In response to the question, "Who certified [the forms]?" he explained, "I put the certification on it, to seal." To the question, "[Y]ou consistently told the U.S. Attorney that you did certify it?" he responded, "I did certify these things, sir. I put the seal on them, and that is a certification." At no point did DePowell represent that he signed the certifications. Even if Williams signed the certifications and "caused" the seal to "be affixed," that does not necessarily imply that Williams affixed the seal. And in any case, Maga fails to demonstrate the materiality of the allegedly false statements, because it is unlikely that the mere fact

15

that DePowell sealed, rather than signed, the certifications affected the jury. Even if DePowell did not certify the Form 4340s, he could still testify as to what he personally observed while verifying Maga's IRS records.

Second, Maga accuses DePowell of misleadingly conflating the Form 4340 (the "official tax transcript" prepared for trial) with the IMF transcript (reflecting records kept in the regular course of the IRS's activities). Though potentially confusing because DePowell refers to both types of forms as "transcripts," Maga has not shown these statements to be actually false. He explained that "transcripts" convey a running account of the tax data for an entity in a given period. He also testified that the IRS maintains transcripts in the course of its normal business (referring to IMF transcripts). When asked specifically about "official tax transcripts," he testified about his role in obtaining such transcripts pertaining to Maga. And to the extent the jury might have mistakenly equated Form 4340s with IMF transcripts, Maga's counsel corrected such potential misunderstandings during cross-examination. *See* Trial Tr. 44:14–45:10, Aug. 3, 2009, ECF No. 78 (probing the differences between an official tax transcript and an IMF transcript). It is therefore unlikely that the initial lack of precision in DePowell's testimony affected the verdict.

Third, Maga contends that DePowell (and the certifications themselves) falsely characterized the Form 4340s as "true and complete transcripts" of the IRS record. But Maga merely points to the differences between the jargon-laden IMF transcript and the plain-English Form 4340s, without explaining in what way that the plain-English translations are any less true or complete.

Failing to unearth an "actually false" statement, Maga argues that the prosecution presented the Form 4340s and accompanying certificates for a false "purpose": "to give the court the impression that the Forms 4340 were business records . . . kept in the ordinary course of activity." Appellant Br. 50. But for a defendant to prevail on a false-testimony claim, "the statement in question [must be] 'indisputably false,' rather than merely misleading." *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000) (quoting *Lochmondy*, 890 F.2d at 823)). Even assuming that the government erred in treating the forms as business records, Maga cannot maintain that the prosecution "knowingly" presented false testimony when it believes its position in good faith. The prosecution's use of DePowell's testimony does not require a new trial.

B. No Plain Prosecutorial Misconduct During Closing Arguments

During closing argument, the prosecutor expressed incredulity at Maga's theory of the case, stating, "Listening to the arguments of defense counsel it would appear that Dr. Maga had decoded a top secret [I]nternal [R]evenue code that only he was able to decipher, indicating that he was one of those rare American citizens that . . . didn't have to file income taxes." Maga contends that the argument unfairly characterized his interpretation of MFR-01 as secret and unfounded, even though he derived his opinion from publicly available IRS documents and a letter from an IRS disclosure officer. The district court refused to grant a new trial, concluding that it "does not find this line of argument out of line."

"When reviewing claims of prosecutorial misconduct, we determine first whether the statements were improper. If they appear improper, we then look to see if they were flagrant and warrant reversal." *United States v. Stover*, 474 F.3d 904, 915 (6th Cir. 2007) (citations omitted). Because Maga failed to object to the statement at trial, we review for plain error. *United States v. Boyd*, 640 F.3d 657, 669 (6th Cir. 2011) (citing *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008)).

The prosecutor's comments are not plainly improper. He did not contrive the decoding imagery himself, but rather responded in kind to defense counsel's repeated claims that Maga "decoded" the true meaning of MFR-01 by perusing IRS documents. The prosecutor did not say that Maga actually deciphered a top-secret code, but only that it would appear as though he did, emphasizing the *peculiarity* of Maga's analysis of MFR-01. Such comments are consistent with the prosecution's theory that Maga could not have sincerely believed such an odd interpretation. *See, e.g.*, Trial Tr. 316:8–19, Aug. 5, 2009, ECF No. 66 (arguing that Maga "[s]pen[t] all of this time assessing the IRS web page, [and] spen[t] all of this time trying to come up with absolutely tor[tu]red applications of obscure [IRS manuals and codes] to justify what he wanted to do anyway").

In short, Maga drew from public sources to create an interpretation that no one shares—or in the prosecution's words, a "secret" interpretation. The mere fact that Maga used public sources in this interpretive process does not shield the resulting misinterpretation from skepticism. The district court did not plainly err in refusing to grant a new trial on this ground.

## V.  Conclusion

Accordingly, we affirm the judgment of the district court in its admission of the Form 4340s

and certificates, the denial of the motion for acquittal, and the denial of the motion for a new trial.