Ronald E. HARRIS, III, Petitioner,

v.

WARDEN, CHILLICOTHE CORRECTIONAL INSTITUTION, Respondent.

Case No. 3:09–cv–60.

United States District Court, S.D. Ohio, Western Division.

Dec. 6, 2011.

Decision Denying Reconsideration Jan. 6, 2012.

Ronald E. Harris, II, Chillicothe, OH, pro se.

Gene D. Park, Stephanie L. Watson, Ohio Attorney General, Columbus, OH, for Respondent.

DECISION AND ENTRY: (1) ADOPT-ING THE REPORT AND RECOM-MENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE (Doc. 22); (2) DENYING PETI-TIONER'S PENDING MOTIONS AS MOOT; (3) DENYING AND DISMISSING PETITIONER'S PE-TITION WITH PREJUDICE; AND (3) TERMINATING THIS CASE

TIMOTHY S. BLACK, District Judge.

This case is before the Court pursuant to the Order of General Reference in the

United States District Court for the Southern District of Ohio Western Division to United States Magistrate Judge Michael J. Newman. Pursuant to such reference, on October 7, 2011, the Magistrate Judge reviewed the pleadings in this case and issued a Report and Recommendations recommending that Petitioner's petition for writ of habeas corpus be denied with prejudice, that all other pending motions be denied as moot and that this case be terminated. (Doc. 22). The parties did not file objections to the Report and Recommendations of the Magistrate Judge and the time for doing so has expired.

As required by 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), the Court has reviewed the comprehensive findings of the Magistrate Judge and considered *de novo* all of the filings in this matter. In this case, based upon the reasoning and citations of authority set forth in the Magistrate Judge's Report and Recommendations (Doc. 18), as well as upon a *de novo* review of this case, the Court adopts the aforesaid Report and Recommendations in its entirety and overrules Petitioner's Objections.

Accordingly, based on the foregoing, the Court: (1) **ADOPTS** the Report and Recommendations of the United States Magistrate Judge (Doc. 22) in its entirety; (2) **DENIES** all remaining pending motions as moot; (3) **DENIES** and **DISMISSES** Petitioner's Petition with prejudice; and (4) **TERMINATES** this case on the Court's docket.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

MICHAEL J. NEWMAN, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 2254, Petitioner Ronald E. Harris ("Harris" or "Petitioner") brings this petition for a writ of *habeas corpus*. In the Champaign County Common Pleas Court, Harris was convicted by jury verdict of four counts of felonious assault, each with a firearm specification, one count of improperly discharging a firearm at or into habitation with a firearm specification, and two counts of having weapons while under disability. (Journal Entry of Judgment, Conviction and Sentence, Doc. 8–1, PAGEID 212–14.) Harris is now serving twelve years of imprisonment in Respondent's custody. (*See id.*)

Proceeding *pro se*, Harris pleads four grounds for relief. Because his claims are not clearly articulated, the Court has liberally construed the petition in Harris's favor and carefully reviewed the state court record, including the trial court transcript. Specifically, Harris raises the following grounds for relief:

**GROUND ONE:** Did the trial court violate Defendant's constitutional rights when they refused to allow Defendant to terminate his counsel.

**Supporting facts:** Did trial court violate Defendants constitutional when they ruled against Defendants request/attorneys request to be removed as counsel.... My request to file a brief was denied.

**GROUND TWO:** Notice of Appeal of Appellant May 2008/Proposition of Law No. 3. The trial court errored to the prejudice of Appellant when he was denied his 4th 14th amendments rights when his conviction an all counts of his indictment were not supported by sufficiency of the evidence and were against the manifest weight of the evidence.

**Supporting facts:** No true bill/property room inventory/multiply counts/faulty warrant/State employee on jury against cause/State employee on jury never removed/911 tape tampered with/search warrant faulty/perjury by David Reesves up/suppressed evidence from jury exh69/witnesses on prosecutor list

and attorney not at trial/history, and testimony for hire of Plaintiff Jury instructions and or jury instruction in writing discharged in into a school. Non-consenul entry suppressed testimony of Defendants witnesses/Defendant witnesses never at court. *See Attachments Brief* pg. 1–40.

**GROUND THREE:** Did Defendant/Appellant receive ineffective assistance of trial counsel in violation of his Sixth and Fourth and Fourteenth Amendment to the United States Constitution.

**Supporting facts:** Counsel did request to be removed from trial shows untold story of conflict of instrest.? Counsel did request second opinion of mental stability, never filed motion as court directed him to do. Never removed prosecutor own employer from jury duty Juror 32 See Jury Selection Oct 12, 2006 pg–53 line 8 failed to supress 911 tape told in attorney confrence it had delitions. Never recieved back ground check on defendant see request no brandy, never inquireded or followed up on witnesse request see trial traial script request be fore trial/never objected to jury tampering see pg 342 line 5 trial traqnscript./never objected to violation See Brief . . . didnt have notes see trial tracript[1]

**GROUND FOUR:** Did the trial court violate the Defendants constitutional rights allowing prosecutorial misconduct during the trial, and before the trial violating Appellants 6th and 14th Amend. rights

**Supporting facts:** They ruled against Defendants motions (1) supress tampered with evidence (2) supress perjured testimony by officers at crime scene (3) supress evidence from crime scene based on search warrant violations (4) recall suppression of warrant from jury (5) supress the utilization of the prosecutor employer as a juror (6) the witness list faulty (7) altered 911 tape (8) prosecutor allowed a conviction on all counts of a allied offense (9) prosecutor failed to produce key witness at trial from list, also back ground of Plaintiff original grand jury intentions no true bill, encounter witnesses. Did prosecutor supress Exhibit 69 the search warrant affidavit from jury DI(10) failed to substain venue as city police. Defendants witness testimony was denied to jury.

(Pet., 1) (quoting verbatim) (capitalization altered).

## I. Procedural History

In May 2006, Harris was indicted on eight counts.[2] (Indictment, Doc. 8–1, PAGEID 200–03.) Attorney Richard E. Nau was appointed to represent him. At the final pretrial conference on July 6, 2006, Attorney Nau moved to withdrawal as counsel on the ground that there was no meaningful attorney/client relationship, but the court denied the motion. (*See* Final Pretrial Tr., Doc. 9–1, PAGEID 585–604; Journal Entry July 9, 2006, Doc. 8–1, PAGEID 206.) Subsequently, the trial court ordered a competency evaluation of Harris upon Attorney Nau's motion. (Pretrial Tr., Doc. 9–2, PAGEID 606–12; Journal Entry Aug. 4, 2006, Doc. 8–1, PAGEID

---

**1.** The last line of page 9 of Harris's *habeas* petition is cut off, so it is not clear what he wrote. It appears that he refers to his counsel's failure to object to a violation in the jury instructions and his counsel's failure to have notes during trial.

**2.** Harris was indicted on five counts of felonious assault, each with a firearm specification, one count of improperly discharging a firearm at or into habitation with a firearm specification, and two counts of having weapons while under disability. (Indictment, Doc. 11–1, PAGEID 200–03.)

208.) After reviewing the competency evaluation report and conferring with the parties, the court concluded that Harris was competent to stand trial once he resumed his prescribed medications. (Att'y Conference Tr., Doc. 9–3, PAGEID 614–25; Journal Entry Oct. 17, 2006, Doc. 8–1, PAGEID 210–11.) In addition, the court denied Attorney Nau's and Harris's renewed requests to remove Nau as defense counsel. (*Id.*)

Thereafter, Harris pleaded not guilty to all counts and the case was tried to a jury. The jury found Harris guilty on seven counts and on November 13, 2006, the trial court sentenced him to a total of twelve years imprisonment. (Journal Entry of Judgment, Conviction and Sentence, Doc. 8–1, PAGEID 200–03.)

### A. Direct Appeal

On December 11, 2006, with the assistance of counsel, Harris timely appealed his conviction and sentence to the Ohio Court of Appeals. (Notice of Appeal, Doc. 8–1, PAGEID 217). However, on September 20, 2007, Harris moved to strike the brief his appellate counsel had previously filed so that he could submit his own brief. (Motion to Strike, Doc. 8–1, PAGEID 224–26.) The Court of Appeals granted Harris's motion, *State v. Harris,* No. 06–CA–39 (Ohio Ct.App.2d Dist. Dec. 4, 2007); (Doc. 8–1, PAGEID 228), and Harris submitted his own brief raising the following assignments of error:

I. Appellant was deprived of his Sixth Amendment Right to effective assistance of counsel, when the trial court abused its discretion when it refused to allow the Appellant to terminate his appointed counsel and obtain new appointed counsel.

II. Defendant/Appellant received ineffective assistance of trial counsel in violation of his Sixth and Four-teenth Amendment to the United States Constitutional Rights.

III. The trial court made pre-trial rulings that were prejudicial to the defendant, these include ruling that defendant/appellant was competent to stand trial after reviewing an evaluation prepared by the Forensic Psychiatry Center, of Western Ohio, even though the reports disposition was inconclusive, and didn't allow the defendant to receive a fair trial.

IV. Defendant/Appellant, received the MAXIMUM SENTENCE on two separate counts. Thus the trial court erred and violated the Defendants Constitutional Rights, and failed to comply with the Ohio Sentencing Guidelines, when it imposed this maximum sentence.

V. The trial court erred to the prejudice of the Appellant, when he was denied his 4th, 6th, and 14th, Amendment Rights under the United States and Ohio Constitution, when his convictions on all of the counts of his indictment were not supported by sufficiency of the evidence and was against the manifest weight of the evidence.

VI. The trial court erred to the prejudice of Appellant when it allowed prosecutorial misconduct during trial thus violating Appellants 6th and 14th Amendments United States Constitutional Rights.

(Appellant's Br., Doc. 8–1, PAGEID 229–51) (quoting verbatim). On April 11, 2008, the Court of Appeals overruled Harris's assignments of error. *State v. Harris,* No. 2006 CA 39, 2008 WL 1114929 (Ohio Ct. App.2d Dist. Apr. 11, 2008); (Doc. 8–1, PAGEID 316–40.)

Although Harris attempted to file a timely Notice of Appeal to the Ohio Supreme Court on or about May 14, 2008—thirteen days before the 45-day filing deadline—the documents were returned to

him because: he did not include the required information regarding the judgment being appealed; the memorandum in support exceeded the 15–page limit; and he did not attach a copy of the opinion of the Court of Appeals. (Letter from the Ohio Supreme Court, May 15, 2008, Doc. 8–1, PAGEID 552.) Harris subsequently filed a second Notice of Appeal on June 19, 2008, but it was returned to him as untimely. (Letter from the Ohio Supreme Court, June 23, 2008, Doc. 8–1, PAGEID 553.) Therefore, on August 4, 2008, Harris moved to file a delayed appeal in the Ohio Supreme Court. (Motion, Doc. 8–1, PAGEID 545–48). However, the Ohio Supreme Court denied his motion on October 1, 2008. *State v. Harris,* No. 2008–1529, 894 N.E.2d 330 (Ohio Oct. 1, 2008); (Doc. 8–1, PAGEID 578.)

**B. Petition for Post–Conviction Relief**

While his direct appeal was pending, Harris filed a petition for post-conviction relief, asserting six claims:

I. I was denied effective assistance of counsel, in violation of my Sixth and Fourteenth Amendment Constitutional Rights. Not only did Attorney Nau, not even attempt to locate or call any of my defense witnesses, to testify in my behalf, at trial, he also refused to ask for Black jurors during the selection and that was after he made the remark to me that "I'm Black and it would never happen in Urbana," unquote.

Attorney Nau, was ineffective because he never entered a Plea of Not Guilty, by Reason of Insanity, on my behalf. *State v. Chapin,* 67–052 s0, 426, 437, [67 Ohio St.2d 437, 424] N.E.2d 317 (1981). Instead Attorney Nau, said he couldn't prepare for a jury trial because he didn't have enough time. He tried to get me to sign a time waiver. Attorney Richard Nau, also

made racially derogatory statements as well as remarks during our relationship. Evidentiary documentation can be obtained for this fact, if I'm allowed to subpoena Mr. Nau, to a Evidentiary Hearing to swear under oath about my claims.

II. Prosecutor Nick Selvaggio, violated my Sixth and Fourteenth Amendment Constitutional Right, to Due Process, when he used an ALTERED copy of the Original 911 Tape, at my trial. It is my contention that the original 911 Tape showed evidence of Defendant's innocence. The following evidentiary documentation can be found once the court issues a court order to have the tape examined by a technical experts to verify that the tapes don't match and that the tape displayed at trial was ALTERED and important parts validating my innocence.

III. My Fourteenth Amendment Constitutional Rights, were violated by this court, when witness Nolan Adams Jr. was allowed to testify against me as a State's Witness, all the time with the knowledge that he is an "Informant" employed by the agents of Champaign County, and who also came on my property with a loaded gun, on the day of the incident in question. The fact that Mr. Adams, is a "Confidential Informant" was also information not made available to the Defendant, in the Discovery Package. The court can verify the aforementioned information by checking the list of "Confidential Informants" employed by the Champaign County, Sheriff's Department, and by subpoenaing Mr. Adams, to a Evidentiary

Hearing, where he'll have to swear under oath.

IV. My Fourteenth Amendment Constitutional Rights, were violated by this court, when it allowed perjured testimony by Sgt. Dave Reese, to be used at Defendant's trial. Sgt. Reese, testified that he had secured the perimeter around my house the day of the incident that Defendant was convicted for, but at the same time, the fact that a MAN by the name of "Informant Mike Hodges" penetrated the same so-called perimeter that day and was present in the Defendant's house the same day, therefore CONTRADICTING testimony that he had indeed SEALED a perimeter around Defendant's house. Evidentiary documentation can be obtained for this fact if Im allowed to subpoena Mike Hodges, to a Hearing, to verify this information.

V. Defendant's Fourteenth Amendment Constitutional Rights were violated, when Prosecutor Nick Selvaggio, used a form of litigation at my trial called "Sweeping" which is illegal and because of this tactic, I was denied a fair and impartial jury at my trial. Evidentiary documentation of this claim can be found at an Evidentiary Hearing, where upon being subpoenaed to a court Hearing, and placed under oath, Mr. Nick Selvaggio, will admit to this illegal tactic.

VI. Defendant requests to have the Court to DISMISS the jury's VERDICT Defendant was legally incompetent before and during the trial. Pursuant to Title 29 O.R.C. § 2945.37(B), Defendant meets all the criteria to have jury's verdict dismissed. (1) There were doubts

expressed by the trial counsel towards Defendant's competency. (2) There was evidence of irrational behavior. (3) The Defendant's demeanor at trial and there should have been a second opinion regarding Defendant's mental state at the time of the trial. *State v. Chapin*, 67 0520 437–439 [67 Ohio St.2d 437, 424] N.E.2d 317 (1981). Evidentiary documentation can be found in the court's journal entry 10–17–2006.

(Appellant's Br., Doc. 8–1, PAGEID 341–46) (quoting verbatim). On September 27, 2007, the trial court granted summary judgment in favor of the State, finding that Harris failed to present evidence to support his claims, and alternatively, that those claims raised on direct appeal were barred by *res judicata. State v. Harris*, No. 2006 CR 141 (Champaign Cnty. Ct.Com.Pl. Sept. 27, 2007); (Doc. 8–1, PAGEID 378–84.)

Harris timely appealed the denial of his post-conviction petition, raising one assignment of error: "The trial court erred when it ruled for summary judgment in favor of the State/Appellee thus denying the Appellant his petition for post conviction relief and a[n] evidentiary hearing, violating his Constitutional Sixth and Fourth Amendment Rights as well as violating Ohio law." (Appellant's Br., Doc. 8–1, PAGEID 401–15) (capitalization altered). On October 3, 2008, the Ohio Court of Appeals affirmed the trial court's judgment. *State v. Harris*, No. 07–CA–32, 2008 WL 4447722 (Ohio Ct.App.2d Dist. Oct. 3, 2008); (Doc. 8–1, PAGEID 463–72.)

 Harris then appealed the denial of his post-conviction petition to the Ohio Supreme Court, arguing three propositions of law:

I. Did the Second District Court err[ ] when Defendant did not receive a

full scale hearing on his post conviction in Common Pleas Court Urbana Ohio, Champaign County in accordance with Rule 2953.21(A)(5)[?]

II. Did the Appeals Court err[ ] when they appointed an [attorney] that would not do a real brief for Defendant, but only further deny the Defendant his 14 Amend. Right[?]

III. Did the [Appeals] Court error when they did not even cover they did not even cover the [assignments/propositions] of Defendant[']s Post Conviction in Appeal Court[?]

(Appellant's Br., Doc. 8–1, PAGEID 475–82) (brackets added) (capitalization altered). However, the Ohio Supreme Court declined to hear Harris's appeal. *State v. Harris*, No. 2008–2210, 901 N.E.2d 246 (Ohio Feb. 18, 2009); (Doc. 8–1, PAGEID 497.) [3]

## II. Analysis

### A. AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a state court decides a federal constitutional claim on the merits, the federal *habeas* court must defer to the state court decision unless: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

■■■ A state court decision is considered "contrary to ... clearly established Federal law," when it is "diametrically different, opposite in character or nature, or mutually opposed." *Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir.2007) (citation omitted). To be deemed "an unreasonable application of ... clearly established Federal law," a state court's decision must be " 'objectively unreasonable,' not simply erroneous or incorrect." *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir.2009) (citation omitted). Further, under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed correct unless the petitioner rebuts them by clear and convincing evidence. *Id.* This statutory presumption of correctness also extends to factual findings made by state appellate courts' review of trial court records. *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir.2003).

### B. Grounds One and Two

The Court construes Ground One as asserting a Sixth Amendment right-to-counsel violation based on the trial court's refusal to remove Harris's appointed counsel. Ground Two claims that there was insufficient evidence to support his guilty verdict, in violation of the Due Process Clause, and in the alternative, his guilty verdict was against the manifest weight of the evidence.

---

3. In addition, Harris filed an application to re-open his direct appeal pursuant to Ohio R. App. P. 26(B), asserting an ineffective assistance of appellate counsel claim. (Appellant's Br., Doc. 8–1, PAGEID 498–508), which the Court of Appeals denied. *State v. Harris*, No. 2006 CA 39 (Ohio Ct.App.2d Dist. July 22, 2008); (Doc. 8–1, PAGEID 525–28.) Harris then appealed to the Ohio Supreme Court. (Appellant's Br., Doc. 8–1, PAGEID 531–36), which declined to hear the case. *State v. Harris*, No. 2008–1751, 895 N.E.2d 567 (Ohio Oct. 29, 2008); (Doc. 8–1, PAGEID 544.) However, these proceedings are irrelevant to this *habeas* proceeding. Harris filed his own brief on appeal and there is no constitutional right to hybrid representation, with a defendant representing himself and also having counsel. *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

The State contends that Grounds One and Two are procedurally defaulted because (1) Harris did not timely appeal these claims to the Ohio Supreme Court on direct appeal; and (2) Harris did not raise these claims in his post-conviction petition. (Return of Writ, Doc. 8–1, PAGEID 175.)

■ To determine whether a claim is precluded from *habeas* review under the procedural default doctrine, a court must apply the three-part test established in *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986):

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . .

Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .

*Eley v. Bagley,* 604 F.3d 958, 964–65 (6th Cir.2010) (citation omitted).

■ Here, Harris raised Grounds One and Two on direct appeal to the Court of Appeals. Nonetheless, the claims are procedurally barred because he failed to perfect his appeal to the Ohio Supreme Court within forty-five days of the Court of Appeals' decision, in violation of Ohio Supreme Court Rule 2.2(A), and the Ohio Supreme Court denied his motion for delayed appeal. *State v. Harris,* No. 2008–1529, 894 N.E.2d 330 (Ohio Oct. 1, 2008); (Doc. 8–1, PAGEID 578.) The Ohio Supreme Court's denial of a motion for delayed appeal procedurally bars a claim from federal *habeas* review. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir.2004) (*per curiam*). Further, because it is assumed that a court enforces an applicable

procedural bar, the claim is procedurally barred even if, as in this case, the Ohio Supreme Court did not explain why it denied the motion. *Id.*

■■ In addition, it should be noted that Ground One was not preserved for *habeas* review even though Harris raised it as a sub-claim of his ineffective assistance of counsel claim—arguing his trial counsel was ineffective due to the breakdown in the attorney-client relationship—in his post-conviction petition. (Appellant's Reply, Doc. 8–1, PAGEID 369–70.) Harris's post-conviction ineffective assistance of counsel sub-claim is distinguishable from his current Sixth Amendment denial-of-counsel claim. To avoid a procedural default, a petitioner must have presented his claims to the state courts "under the same theory in which it is later presented in federal court." *Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998).

■ Therefore, Grounds One and Two are procedurally barred unless Harris "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). To meet the "cause" prong, a *habeas* petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray,* 477 U.S. 527, 533–34, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). The "miscarriage of justice" standard requires the petitioner to present evidence that he is actually innocent, showing "it is more likely than not

that no reasonable juror would have convicted him in light of the new evidence in his *habeas* petition." *Calderon v. Thompson,* 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). As "cause" to excuse his untimely appeal to the Ohio Supreme Court, Harris asserts that he, in fact, timely appealed within forty-five days of the Court of Appeals' judgment, but it was returned to him for technical reasons—exceeding the 15–page limit and other grounds. This excuse does not overcome the procedural default doctrine, however, given that the Sixth Circuit has held that lack of counsel on appeal to the Ohio Supreme Court, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to overcome a procedural default. *See Bonilla,* 370 F.3d at 498. Here, Harris not only exceeded the page limit—he also failed to include the required information about the judgment being appealed, and failed to attach a copy of the Court of Appeals' judgment, both of which are required under the Ohio Supreme Court Rules of Practice. Moreover, Harris had sufficient time to correct his errors because the letter from the Ohio Supreme Court was dated May 15, 2008 and the deadline for filing the appeal was May 27, 2008.

Therefore, Harris has failed to overcome the procedural default of Grounds One and Two and the claims should be dismissed.

 Finally, although the Court has determined that Grounds One and Two are procedurally barred, it will briefly address the claims on the merits. Because an indigent defendant does not have an absolute right to choose his appointed counsel, *Wheat v. United States,* 486 U.S. 153, 159,

108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), a defendant must show "good cause" to have new counsel appointed. *United States v. Iles,* 906 F.2d 1122, 1130 (6th Cir.1990). Here, the Court of Appeals extensively reviewed the record and determined that Harris failed to show the requisite good cause, *see State v. Harris,* No. 2006 CA 39, 2008 WL 1114929 (Ohio Ct.App.2d Dist. Apr. 11, 2008); (Doc. 8–1, PAGEID 318–19), and the Court will defer to those factual findings. 28 U.S.C. 2254(e)(1).

 The Court of Appeals attributed Harris's dissatisfaction with his counsel to the following: (1) Harris's disappointment that his attorney had not convinced the prosecutor to dismiss the charges; and (2) Harris's mental state, which was partially due to his failure to take his prescribed medication. *See State v. Harris,* No. 2006 CA 39, 2008 WL 1114929 (Ohio Ct.App.2d Dist. Apr. 11, 2008); (Doc. 8–1, PAGEID 318–19.) This does not constitute good cause to warrant the appointment of new counsel. *See United States v. Vasquez,* 560 F.3d 461, 468 (6th Cir.2009). Further, having reviewed the trial court record, the Court finds that Harris's counsel provided him with an adequate defense. *See id.* Therefore, Ground One also fails on the merits.

 Likewise, Ground Two is meritless.[4] The test for evaluating whether a conviction is supported by sufficient evidence to satisfy the Fourteenth Amendment is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct.

---

4. The Court will not review the manifest weight claim because it is purely a question of state law. However, it will consider the insufficient evidence claim, as it implicates the

Due Process Clause. *See Tibbs v. Florida,* 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

2781, 61 L.Ed.2d 560 (1979). In denying Harris's insufficiency of the evidence claim on direct appeal, the Court of Appeals analyzed the evidence supporting Harris's convictions, including the following: (1) the physical evidence showing that four shots were fired from the front room of 345 Hill Street; (2) Adams' testimony—that after speaking with Harris at the door of his residence, shots were fired at his truck while he was leaving; (3) Adams' identification of Harris as the shooter; (4) the lack of evidence that other individuals were present at 345 Hill Street; and (5) Harris's prior convictions, which precluded him from having a weapon illegally. *See State v. Harris*, No. 2006 CA 39, 2008 WL 1114929 (Ohio Ct.App.2d Dist. Apr. 11, 2008); (Doc. 8–1, PAGEID 324–25.) Applying the *Jackson* standard, the evidence recited by the Court of Appeals was clearly sufficient to support Harris's convictions. Therefore, Ground Two should also be dismissed on the merits.

### C. Ground Three

In Ground Three, Harris claims that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendment. Construing Harris's petition liberally, the Court finds he alleges that his counsel was ineffective on the following grounds: (1) he did not seek a second competency evaluation;[5] (2) he did not exercise a challenge to remove the assistant prosecutor from the jury; (3) he failed to suppress the allegedly altered 911 recording; (4) he failed to obtain a background check on him; (5) he did not object to the alleged jury tampering; (6) he did not object to the jury instructions; (7) he failed to call the witnesses he requested; and (8) he was not prepared for trial. (*See* Petition, Doc. 1, PAGEID 9.)

The State contends that all of these sub-claims, other than one, are procedurally defaulted because Harris failed to timely perfect his direct appeal to the Ohio Supreme Court. The Court will thus review each sub-claim to determine whether it is procedurally defaulted.

▬▬▬ Harris's first sub-claim was raised on direct appeal, but as discussed above, it is procedurally defaulted because he failed to timely appeal to the Ohio Supreme Court and his motion for delayed appeal was denied. *See Bonilla*, 370 F.3d at 497. Although Harris challenged the court's competency determination in his post-conviction petition, he did not claim that his counsel was ineffective for that reason. (*See* Appellant's Br., Doc. 8–1, PAGEID 341–45.) Because claims of ineffective assistance of counsel are based on an "analytically distinct" legal theory from the underlying claim, the underlying claim itself must be presented to the state courts to preserve the argument for *habeas* review. *See White v. Mitchell*, 431 F.3d 517, 526 (6th Cir.2005). Thus, the first sub-claim is barred.[6]

---

5. Interestingly, at a pretrial conference, Harris objected to the fact that his attorney sought the first competency evaluation. (*See* Att'y Conference Tr., Doc. 9–3, PAGEID 620.)

6. Alternatively, Harris's claim would be unsuccessful on the merits because he has not met the prejudice prong of *Strickland*. 466 U.S. at 694, 104 S.Ct. 2052. The Court finds that there is no reasonable probability that the trial judge would have declared him incompetent even had his counsel requested a second competency evaluation. *See id.* At a sidebar conference during the second day of trial, Harris's counsel informed the court that Harris "is not thinking straight today" and explained that his "suggested questions are somewhat strange." (Trial Tr., Doc. 8–6, PAGEID 976.) In response, the judge stated, "The record should reflect that the Defendant is on medications to stabilize his emotional condition. And that he's been on the medication since Tuesday of this week and that Attorney Nau reported prior to trial that he

Second, Harris's claim that his counsel was ineffective for failing to object to the assistant prosecutor on the jury is also procedurally defaulted because the Ohio Supreme Court denied his motion for delayed appeal. *See Bonilla,* 370 F.3d at 497. Moreover, this claim lacks merit because it is not true. Indeed, Harris's counsel challenged that juror for cause and when the court denied his challenge, he exercised a peremptory challenge, which was granted. (Trial Tr., Doc. 9–4, PAGEID 719–22.)

■ Third, Harris's claim that his counsel failed to object to the allegedly altered 911 recording is procedurally defaulted for the same reason: his motion for delayed appealed was denied. *See Bonilla,* 370 F.3d at 497. Further, Harris's allegation of prosecutorial misconduct regarding the 911 recording in his post-conviction petition did not preserve his present *habeas* ineffective assistance of counsel claim. *See White,* 431 F.3d at 526. In any event, Harris's claim would not be successful on the merits. As Harris has not presented any evidence to support his assertion that the 911 recording was altered, he has failed to demonstrate a reasonable probability that the proceeding would have been different had his counsel objected. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

■ Harris's fourth, fifth and sixth sub-claims—his counsel failed to obtain a background check on him; failed to object to alleged jury tampering; and failed to object to the jury instructions—are procedurally defaulted. Harris did not present these issues on direct appeal or in his post-conviction relief petition. (See Appellant's Br., Doc. 8–1, PAGEID 229–51, 341–45.) Under Ohio Revised Code § 2953.23(A), a

court cannot consider a second petition for post-conviction relief unless the petitioner demonstrates: (1) he or she he was "unavoidably prevented" from discovering the new evidence on which he relies; or (2) he is relying on a new federal or state right that applies retroactively. Ohio Rev. Code § 2953.23(A)(1) (West 2011). Therefore, because Harris failed to exhaust these sub-claims and the Ohio courts would no longer entertain them, they are now procedurally defaulted. *See Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir.2006).

Accordingly, as Harris has not demonstrated cause to overcome the procedural default, sub-claims one through six in Ground Three should be dismissed.

■ Finally, the remaining two sub-claims—failing to call witnesses and being unprepared at trial—are not procedurally defaulted because they were properly raised in Harris's post-conviction petition. (*See* Appellant's Br., Doc. 8–1, PAGEID 341–45.) Accordingly, the Court will review these sub-claims on the merits.

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-part *Strickland v. Washington* test by demonstrating that his counsel's performance was deficient, and that he was prejudiced as a result. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Because there is "a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," to meet the "deficiency" prong, the defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688–90, 104 S.Ct. 2052. To satisfy the "prejudice" prong, "[t]he defendant must show that, but for counsel's unprofessional errors,

appeared to be reasonably stable." (*Id.*) Harris's counsel then confirmed that he believed Harris had started his medication the previ-

ous week. (*Id.*) Therefore, it is doubtful that the court would have declared Harris incompetent after a second competency evaluation.

the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

■ With regard to his sub-claim that his trial counsel failed to interview and call the witnesses he had requested, the trial court held:

Regarding Defense Counsel's alleged failure to call witnesses on Defendant's behalf, the Court finds that Defendant has not identified these witnesses or indicated what relevant information these witnesses may have provided. See *State v. Gaines* (Nov. 30, 2006), 8th Dist. Cuyahoga App. No. 87768, 2006 Ohio 6277[, 2006 WL 3446229]. The Court notes that those who were present at the crime scene were called as witnesses by the State and subject to cross examination. This claim is without merit.

*State v. Harris,* No. 2006 CR 141 (Champaign Cnty.Ct.Com.Pl. Sept. 27, 2007); (Doc. 8–1, PAGEID 381.) On appeal, the Court of Appeals reiterated the trial court's finding: "As the trial court noted, Harris neglected to identify any particular witnesses or indicate what their testimony would have been. Therefore, he failed to show prejudice." *State v. Harris,* No. 07–CA–32, 2008 WL 4447722 (Ohio Ct.App.2d Dist. Oct. 3, 2008); (Doc. 8–1, PAGEID 466.)

Although the Court of Appeals did not cite *Strickland v. Washington,* its decision is still entitled to deference as long as the result is consistent with the *Strickland* standard. *Harrington v. Richter,* — U.S. ——, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011). In his post-conviction petition, Harris did not name any individuals which he believed should have been called. (*See* Appellant's Br., Doc. 8–1, PAGEID 342–45; Appellant's Reply, Doc. 8–1, PAGEID 368–72; Appellant's Br., Doc. 8–1, PAGEID 402). Thus, the Court of Appeals' decision is consistent with the *Strickland*

standard. By not identifying the witnesses and their expected testimony, Harris failed to overcome the presumption that his counsel's decision not to call the witnesses was "sound trial strategy" and likewise failed to show that he was prejudiced. *Strickland,* 466 U.S. at 689, 694, 104 S.Ct. 2052.

■ With respect to his second subclaim that his counsel was unprepared at trial, the trial court held:

The Court finds Defendant's claim regarding trial preparation time to be without merit. Defendant has failed to identify how this alleged statement amounted to ineffective assistance or that Defense Counsel's preparation was, in fact, inadequate. The Court finds that Defense Counsel was adequately prepared for trial. See *State v. Coleman* (Oct. 4, 2002), 2nd Dist. Clark App. No. 2001–CA–42, 2002 WL 31242241, 2001 Ohio App. LEXIS 5396. See, also, *State v. Jackson* (1980), 64 Ohio St.2d 107, 413 N.E.2d 819; *State v. Dempsey* (June 15, 2000), 8th Dist. Cuyahoga App. No. 76386, 2000 WL 777003, 2000 Ohio App. LEXIS 2628.

*State v. Harris,* No. 2006 CR 141 (Champaign Cnty. Ct. Com. Pl. Sept. 27, 2007); (Doc. 8–1, PAGEID 380.) On appeal, the Court of Appeals stated, "The trial court also found that the record belied Harris' conclusory allegations about a lack of trial preparation. Having witnessed trial counsel's performance, the trial court opined that counsel was adequately prepared." *State v. Harris,* No. 07–CA–32, 2008 WL 4447722 (Ohio Ct.App.2d Dist. Oct. 3, 2008); (Doc. 8–1, PAGEID 466.)

The Court of Appeals' decision was not an unreasonable application of *Strickland.* As the court noted, Harris did not offer any specificity as to how and when his counsel was unprepared during trial.

Thus, Harris failed to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," as required under *Strickland,* 466 U.S. at 689–90, 104 S.Ct. 2052.

Accordingly, all the sub-claims in Ground Three should be dismissed.

### D. Ground Four

In Ground Four, Harris contends that the prosecutor engaged in misconduct, thereby violating his due process rights. Construing the petition liberally, the Court finds that Harris alleges that the prosecutor engaged in the following acts of misconduct: (1) presented tampered evidence, i.e., the 911 recording; (2) presented perjured testimony; (3) presented evidence obtained with a faulty search warrant in violation of the Fourth Amendment; (4) permitted an assistant prosecutor to sit as a juror; (5) provided a "faulty" witness list; (6) convicted him on allied offenses;[7] (7) failed to produce a key witness; (8) did not disclose the victim's criminal history; (9) did not produce a true bill; (10) suppressed the search warrant affidavit; and (11) failed to prove venue. The State argues that all these sub-claims, other than two, are procedurally defaulted.

■ The Court views Harris's first sub-claim—that the prosecutor admitted tampered evidence—as referring to the 911 recording. The State concedes that this claim is not procedurally defaulted. Therefore, the Court will review the first sub-claim on the merits.

■ In considering prosecutorial misconduct claims on *habeas corpus* review, the test is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (citation omitted), or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher,* 602 F.2d 117, 119 (6th Cir. 1979). Clearly, a prosecutor's presentation of known false evidence violates a defendant's due process rights. *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). To prevail on such a claim, the defendant must demonstrate that the evidence was false, the prosecution knew it was false, and the false evidence was material. *See United States v. O'Dell,* 805 F.2d 637, 641–42 (6th Cir.1986).

In denying this claim on post-conviction review, the trial court stated:

> Defendant claims his rights were violated by the Prosecutor's use of an "altered" 911 tape at trial. According to Defendant, this tape omitted exculpatory material contained on the "original" tape. Defendant has not identified or implied what this allegedly exculpatory material is. Defendant has not demonstrated why this challenge to the use of allegedly improper evidence is not available on direct appeal. The Court finds that this claim is without merit.

*State v. Harris,* No. 2006 CR 141 (Champaign Cnty.Ct.Com.Pl. Sept. 27, 2007); (Doc. 8–1, PAGEID 381–82.) In affirming the trial court's denial of his post-conviction petition, the Court of Appeals held:

> The second claim for relief in Harris' petition alleged that the prosecutor violated his constitutional rights by using

---

7. Although this is a state law claim, it could liberally be construed as a Double Jeopardy claim. Nonetheless, this sub-claim fails on the merits because it is not true. In fact, the trial court agreed that the four counts of felonious assault were allied offenses under Ohio Revised Code § 2941.25 and merged Counts Two, Three and Four into Count One for sentencing purposes. (Sentencing Tr., Doc. 9–7, PAGEID 1189–91.)

an altered copy of a 911 tape at trial. Harris insisted that the original tape would have shown his innocence. The trial court pointed out, however, that Harris had "not identified or [even] implied" what exculpatory information allegedly had been removed from the tape. Absent more specific operative facts from Harris, the trial court did not err in rejecting his claim.

*State v. Harris,* No. 07–CA–32, 2008 WL 4447722 (Ohio Ct.App.2d Dist. Oct. 3, 2008); (Doc. 8–1, PAGEID 466–67.)

While it is true that Harris did not specify what was omitted or added to the 911 recording in his original petition for post-conviction relief, on appeal to the Ohio Court of Appeals, Harris did provide some insight into how it was allegedly altered. Specifically, he asserted that on the original 911 tape, the victim stated he was driving East on Hill Street and "for no reason Ron Harris shot at me." (Appellant's Br., Doc. 8–1, PAGEID 411.) Harris maintains that this statement and others were deleted from the recording. (*See id.*) However, Harris has never provided any reliable evidence to support his claim. Instead, in the state court proceedings, Harris suggested that two parts of testimony support his claim. First, he pointed out that the 911 dispatcher stated it was a "recording within a recording," (Trial Tr., Doc. 9–6, PAGEID 973), but that, in itself, does not mean that the 911 tapes were altered. Second, in his post-conviction appeal, Harris alleged that Nolan Adams, Jr., the victim, stated that he had a police scanner. Rather, Nolan Adams, Jr. testified that his *father* may have heard about the incident on the scanner. (*Id.* at 770.)

Having reviewed the trial transcript, the Court finds that there was no evidence in the record that the 911 recording was altered. The prosecutor laid a proper foundation through the 911 dispatcher's testi-mony. (*See id.* at PAGEID 968–74.) In addition, the two parties to the 911 call—Nolan Adams, Jr. and Officer Shawn Schmidt—confirmed that the recordings were accurate after listening to them. (Trial Tr., Doc. 9–5, PAGEID 768–69; Trial Tr. Doc. 9–6, PAGEID 969–74.) Thus, Harris not only failed to prove that the 911 recording was actually false, he failed to show that the prosecutor knew it was false. Accordingly, the Court of Appeals' decision was not contrary to clearly established Supreme Court precedent.

■ Next, as the State also concedes that the second sub-claim—that the prosecutor offered Sergeant Reese's perjured testimony—is not procedurally barred, the Court will review it on the merits. In addressing this sub-claim, the Court of Appeals wrote:

In his fourth claim for relief, Harris alleged that the trial court violated his constitutional rights by allowing perjured testimony from Sergeant Dave Reese to be used against him. According to the petition, Sergeant Reese testified that the secured the perimeter around Harris' home on the day of the crime. Harris alleged, however, that an individual named Mike Hodges entered the home sometime that day. Harris asserted that Hodges' presence contradicted Sergeant Reese's testimony and demonstrated that it was perjured. The trial court correctly pointed out that Harris' claim about Hodges entered the home, even if true, in no way established perjury by Sergeant Reese. It could be that Sergeant Rose was unaware of Hodges' entry into the home. It also could be that Hodges entered the home before the perimeter was established or after it was terminated. Moreover, even if Hodges did breach the perimeter with Sergeant Reese's knowledge, Harris' pe-

tition failed to explain how he was prejudiced. A bare allegation that Hodges entered the house, without more, is not indicative of perjury by Sergeant Reese. The trial court did not err in finding no basis for post-conviction relief. ˙

*State v. Harris*, No. 07–CA–32, 2008 WL 4447722 (Ohio Ct.App.2d Dist. Oct. 3, 2008); (Doc. 8–1, PAGEID 468.)

▋ A defendant's due process rights are violated when the prosecutor knowingly suborns perjury to obtain a conviction. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). To prove that the prosecutor engaged in such conduct, the defendant must demonstrate that the testimony referred to was actually false, it was material, and the prosecutor knew it was false. *Id.* Further, the statement must be "indisputably false," rather than simply misleading. *Id.* at 823

Here, as the Ohio Court of Appeals pointed out, Harris's claim fails because he has not demonstrated that Sergeant Reese's testimony was "indisputably false." Even assuming that Harris's unsupported assertion was true and someone else had been in the house, it still would not show that Sergeant Reese lied and the prosecutor knew he was lying. Therefore, the Court of Appeals' holding was not contrary to clearly established Supreme Court precedent.

▋ The remaining sub-claims—(3) not suppressing the evidence obtained with a faulty warrant;[8] (4) allowing the assistant prosecutor to sit on the jury;[9] (5) providing a faulty witness list;[10] (6) convicting him on allied offenses; (7) failing to produce a key witness;[11] (8) not disclosing the victim's criminal history;[12] (9) not producing a true bill;[13] (10) suppressing the search warrant affidavit;[14] and (11) failing

---

8. This sub-claim fails because the prosecutor did not engage in any misconduct. Rather, when the prosecutor realized that the police officers did a cursory search of Harris's residence—to ensure no one was still present in the house—before they had obtained a search warrant, he promptly informed the court and Harris's counsel. (Trial Tr., Doc. 9–6, PAGEID 1036–43.) Harris's counsel then had an opportunity to question the police officers about the incident. (*See id.*) Ultimately, Harris's counsel decided not to challenge the search because he believed it was conducted for officer safety. (*See id.* at 410.)

9. This claim fails because it was harmless error. *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). That juror was removed through a peremptory challenge. (Trial Tr., Doc. 9–1, PAGEID 719–22.)

10. This sub-claim lacks merit because it does not allege prosecutorial misconduct. Nothing prevented Harris from calling these witnesses when the State failed to call them. Further, all the witnesses present at the crime scene, other than Harris himself, testified.

11. As the "faulty witness list" sub-claim fails, this sub-claim likewise fails.

12. Even if this claim is true, it is harmless error. *See Chapman*, 386 U.S. at 22, 87 S.Ct. 824. The criminal history of Nolan Adams, Jr., the victim, was elicited from him while he was on the stand. On direct examination, the prosecutor asked him if, on the date of the shooting, he was on post release control for a previous felonious assault conviction and Adams confirmed those facts. (Trial Tr., Doc. 9–6, PAGEID 761–62.) On cross-examination, Harris's attorney further inquired into his felonious assault charge. (*See id.* at 776–77.)

13. This sub-claim is meritless. The True Bill was part of the Indictment. (Indictment, Doc. 8–1, PAGEID 202.)

14. This claim is without merit. The prosecutor did not suppress the affidavit supporting the search warrant. Rather, the prosecutor decided not to offer the affidavit into evidence. (Trial Tr., Doc. 9–6, PAGEID 1097.) The defense could have offered it into evidence, but decided not to do so. (*See id.*)

to prove venue[15]—are procedurally defaulted. Although some of the sub-claims were addressed on direct appeal, Harris failed to timely appeal them to the Ohio Supreme Court, and his motion for delayed appeal was denied. *See Bonilla,* 370 F.3d at 497. Further, Harris never raised them in his post-conviction proceedings. (*See* Doc. 8–1, PAGEID 341–45, 367–72.) Therefore, because Harris failed to exhaust these sub-claims and the Ohio courts would no longer entertain them under Ohio Revised Code § 2953.23(A), they are now procedurally defaulted. *See Williams,* 460 F.3d at 806.

Finally, as discussed above, Harris has not demonstrated there was cause and prejudice to excuse his procedural default. Accordingly, Ground Four should be dismissed.

## III. OTHER MOTIONS

Harris moved to file a second *habeas corpus* petition, which the Sixth Circuit Court of Appeals denied on January 21, 2011. *In re: Harris,* No. 10–3254 (6th Cir. Jan. 21, 2011); (Doc. 19.) Subsequently, Harris filed a motion in this Court, which the Court liberally construes as a request to reconsider the Sixth Circuit's denial of his second *habeas* petition. (Doc. 20.) This motion should be denied because the Court cannot consider a second *habeas* petition unless the Sixth Circuit authorizes it do so. 28 U.S.C. § 2244(3).

Additionally, the Court notes that Harris's motion to expand the record, which was denied without prejudice on August 25, 2009, is moot. (Doc. 12.) As the Court has now determined that the majority of Harris's claims are procedurally defaulted and that those remaining fail on the merits, it would be futile to expand the record. Therefore, that motion and all other mo-

tions pending herein should be denied as moot.

## IV. RECOMMENDATION

It is therefore **RECOMMENDED** that Petitioner's § 2254 petition for a writ of *habeas corpus* be **DENIED WITH PREJUDICE** and all motions pending herein be **DENIED AS MOOT;** and this case be **TERMINATED** on the Court's docket.

October 7, 2011

## DECISION AND ENTRY: (1) OVERRULING PETITIONER'S OBJECTIONS (DOC. 31); AND (2) DENYING PETITIONER'S MOTION FOR RECONSIDERATION (DOC. 32)

This case is before the Court on Petitioner's Objections to the Report and Recommendations of the Magistrate Judge (Doc. 31) and Petitioner's Motion for Reconsideration. (Doc. 32). On October 7, 2011, the Magistrate Judge reviewed the pleadings in this case and issued a Report and Recommendations recommending that Petitioner's petition for writ of habeas corpus be denied with prejudice, that all other pending motions be denied as moot and that this case be terminated. (Doc. 22). Thereafter, Petitioner moved for an extension of time to file objections. (Doc. 23). The Magistrate Judge granted Petitioner an extension up to and including November 25, 2011 to file objections. (Doc. 24).

On December 6, 2011, following a *de novo* review of the record, and noting the absence of any filed objections to the Report and Recommendations of the Magistrate Judge, the Court adopted the findings set forth by the Magistrate Judge in their entirety and denied and dismissed Petitioner's petition. (Doc. 29). Thereafter, on or about December 12, 2011, the Clerk of Court received a filing from Peti-

---

**15.** This claim is without merit. Sergeant Reese testified that the 300 block of Hill Street was in Champaign County. (Tr. Transcript, Doc. 9–5, PAGEID 862.)

tioner titled "Notice Regarding Objections," which was docketed on December 13, 2011. (Doc. 31). The Court liberally construes such filing as Petitioner's Objections to the Report and Recommendations of the Magistrate Judge.

On December 21, 2011, the Clerk of Court received another filing by Petitioner captioned "Review of the Record," which was docketed that same day. (Doc. 32). The initial paragraph of the December 21 filing requests reconsideration, and accordingly, the Court liberally construes the December 21 filing as a motion requesting the Court to consider his Objections and to amend judgment under Fed.R.Civ.P. 59(e).

With regard to Petitioner's Objections, the certificate of service affixed thereto certifies that they were mailed on December 11, 2011, well after the extended deadline for filing Objections. Accordingly, the Objections are untimely. Further, Petitioner's Objections are overly general, nonspecific and fail to dispute any specific portion of the Report and Recommendation. *See Spencer v. Bouchard,* 449 F.3d 721, 725 (6th Cir.2006) (stating that "[o]verly general objections do not satisfy the objection requirement" and that "[t]he objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious") (citing *Miller v. Currie,* 50 F.3d 373 (6th Cir.1995)).

Accordingly, based on the foregoing, Petitioner's Objections are **OVERRULED** as untimely, non-specific and otherwise insufficient to satisfy the objection requirements of Fed.R.Civ.P. 72(b). Having overruled Petitioner's Objections, Petitioner's motion to amend the judgment (Doc. 32) is **DENIED.**

**IT IS SO ORDERED.**